[No. 7869-8-III.   Division Three.   January 29, 1987.]

THE STATE OF WASHINGTON, *Respondent,* v. TIMOTHY
TOM HALL, *Appellant.*

*John Zeimantz,* for appellant (appointed counsel for appeal).

*Thomas Metzger, Prosecuting Attorney,* and *Ralph Perkins, Deputy,* for respondent.

McINTURFF, C.J.—Timothy Hall was convicted of first degree burglary of a residence following a bench trial. Mr. Hall first argues there was insufficient evidence upon which to base a conviction. Second, Mr. Hall objects that possession of firearms taken in the course of a burglary does not constitute being "armed with a deadly weapon" for purposes of first degree burglary. We reject both of the arguments and affirm the conviction.

Mr. Helland testified he burglarized the residence in Pend Oreille County near Fan Lake on September 9, 1985, along with his cousin, the defendant, Timothy Tom Hall. Mr. Helland described the residence and stated entry was made by Mr. Hall prying open a window. Mr. Helland testified they took a stereo, rifle, handgun and ammunition for the rifle and put them in the trunk of the car. The method of entry was corroborated by the officer who investigated the burglary scene.

Mr. Helland further testified he assisted Mr. Hall in five burglaries over a period of a few days and during that time he (Mr. Helland) was taking drugs, including cocaine and mushrooms, every day. He stated the drugs affected his perception and memory, although not to the extent he believed events happened that did not occur. Mr. Helland said he was not armed when he entered the residence and did not load the rifle or handgun taken from the residence.

Mr. Hall denied committing the burglary. He stated both he and Mr. Helland were on drugs every day during the time the offenses were committed. Mr. Hall reported Mr. Helland used cocaine, marijuana, mushrooms and alcohol daily and that after Mr. Helland started using cocaine he began doing crazy things, including threatening a friend with a handgun.

■ The first issue is whether there was sufficient evidence to convict Mr. Hall of first degree burglary, given that the State's primary witness, Mr. Helland, was on drugs at the time of the burglary. The inquiry of a court reviewing the sufficiency of evidence to support a guilty verdict in a criminal case is to determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Green,* 94 Wn.2d 216, 221, 616 P.2d 628 (1980).

■ The rule in Washington is that a conviction can rest upon the uncorroborated testimony of an accomplice, if the trier of fact, exercising due caution, believes the accomplice. *State v. Mallory,* 69 Wn.2d 532, 535, 419 P.2d 324 (1966). Although Mr. Hall was tried by the bench, the rule is the same in a jury trial except that a cautionary instruction to the jury is required. *State v. Denney,* 69 Wn.2d 436, 418 P.2d 468 (1966).

Mr. Hall cites *State v. White,* 10 Wash. 611, 39 P. 160, 41 P. 442 (1895) for the proposition that Mr. Helland's testimony as a drug user and accomplice is suspect. That court admitted testimony of an opium consumer, who was under the influence of opium at the time of the occurrence that he testified about, holding the witness competent. The *White* court noted the witness' testimony was unreliable, however, and the jury should be carefully cautioned as to his credibility.[1]

We found no recent cases in Washington that analyze sufficiency of the evidence for conviction when the prosecution's witness was under the influence of mind–altering

---

[1]Competency is not challenged here and there is little question Mr. Helland was competent to testify. ER 601, the general rule of competency, makes everyone competent to be a witness unless otherwise provided by statute or court rule. CrR 6.12 governs the competency of a witness in superior court in criminal cases. CrR 6.12(a) provides that any person may be a witness unless an exception is otherwise provided. CrR 6.12(c) provides that a person intoxicated at the time of examination as a witness is incompetent, but does not exclude a witness intoxicated at the time he perceived the event about which he is testifying.

drugs at the time he perceived the events about which he is testifying. However, several cases from other jurisdictions analyze this issue and support our conclusion that a witness' drug use, at the time the witness perceives the events to which he or she testifies, is a matter of credibility for the trier of fact.[2]

The trial court made the following finding of fact:

Defendant did enter the Lerch residence in Pend Oreille County, did commit a crime therein and was armed with a deadly weapon, on or about September 9, 1985. The deadly weapon was obtained by the [defendant] in the residence.

Mr. Helland admitted to the trial court that he had been using drugs at the time the burglaries were committed and that the drugs affected his perception and memory. A trial court's oral opinion and memorandum opinion may be considered in interpreting the findings of fact and conclusions of law. *Northern Pac. Ry. v. State Utils. & Transp. Comm'n*, 68 Wn.2d 915, 920, 416 P.2d 337 (1966); *State v. Mallory, supra* at 533. Here, the oral opinion shows the court used due care in considering the weight to be given Mr. Helland's testimony:

---

[2]In *In re Yates*, 35 Ill. App. 3d 829, 342 N.E.2d 791 (1976), the testimony of a narcotics addict relating events of a stabbing was sufficient to find respondent delinquent and to commit her to Department of Corrections, where testimony of the addict was positive, credible and corroborated by a pathologist and an investigator and where respondent's version was untenable. In *State v. Booth*, 423 S.W.2d 820 (Mo. 1968), the court held testimony of a drug addict who took heroin injections within 12 hours before the occurrence of the events to which he testified, the latest injection being 15 minutes before the occurrence, constituted substantial direct testimony that the accused shot the deceased. Finally, in *Commonwealth v. Reginelli*, 208 Pa. Super. 344, 222 A.2d 605, 608 (1966), *cert. denied*, 387 U.S. 945, 18 L. Ed. 2d 1331, 87 S. Ct. 2078 (1967), the court was concerned with a prosecution witness on the drug dolophine at the time he heard the damaging conversations to which he testified during the trial of the defendant for arson. The court held the weight to be given the witness' testimony was for the determination of the court below, which was sitting as the jury and heard the facts about the witness and observed his demeanor and other traits. *Reginelli*, 222 A.2d at 609. *See generally* Annot., *Use of Drugs as Affecting Competency or Credibility of Witness*, 65 A.L.R.3d 705 (1975).

The issue that's most contested is, of course, whether the defendant was present or whether Mr. Helland is mistaken. I note that Mr. Helland testified not only specifically as to the house, the kind of house it was, how entry was made, but also specifically testified that Mr. Hall was the one that opened the sliding glass door. The evidence from Mr. Hall, on the other hand, is that . . . simply that he wasn't there.

We hold the trial court used due care in weighing Mr. Helland's testimony and choosing to believe him despite his drug use and despite Mr. Hall's denial of participation in the burglaries. There is sufficient evidence to support the court's finding that Mr. Hall participated in the burglary and to find him guilty beyond a reasonable doubt.

The second issue is whether possession of firearms taken in the course of a burglary constitutes being "armed with a deadly weapon" as required by RCW 9A.52.020(1)(a) for conviction of first degree burglary, when the guns are not loaded, but ammunition is taken as well, and the guns and ammunition are transported to the trunk of a car. RCW 9A.52.020(1)(a) provides in part:

Burglary in the first degree. (1) A person is guilty of burglary in the first degree if, with intent to commit a crime against a person or property therein, he enters or remains unlawfully in a dwelling and if, in entering *or while in the dwelling or in immediate flight therefrom,* the actor or another participant in the crime (a) is armed with a deadly weapon, or (b) assaults any person therein.

(Italics ours.)

The "deadly weapon" definition is found in former RCW 9A.04.110(6):

"Deadly weapon" means any explosive or loaded or *unloaded firearm,* and shall include any other weapon, device, instrument, article, or substance, including a "vehicle" as defined in this section, which, under the circumstances in which it is used, attempted to be used, or threatened to be used, is readily capable of causing death or serious bodily injury;

(Italics ours.)

We find no Washington case directly addressing

what constitutes "armed with a deadly weapon" within the first degree burglary statute. However, in *State v. Sabala,* 44 Wn. App. 444, 723 P.2d 5 (1986), Mr. Sabala was convicted of possession of heroin with intent to deliver. This court held that for purposes of enhancing a sentence based on the defendant's being armed with, or in possession of, a firearm, a person is "armed" if a weapon is "easily accessible and readily available for use by the defendant for either offensive or defensive purposes." *State v. Sabala, supra* at 448. The defendant was found to be in possession of a loaded pistol found directly under the driver's seat, positioned in a manner easily accessible to the driver, which we held constituted being armed with or in possession of a deadly weapon. *State v. Sabala, supra* at 448.

Mr. Hall cites *State v. Befford,* 148 Ariz. 508, 715 P.2d 761 (1986), wherein the Supreme Court of Arizona held defendant was not armed with a deadly weapon so as to sustain a conviction of first degree burglary when defendant placed the victim's unloaded shotgun near the front door during a burglary, along with other items of value which he intended to steal. The *Befford* court held at page 510 that to be armed defendant must possess the item considered a deadly weapon in such a manner as to indicate his willingness or present ability to use it as a weapon. The rationale of the *Befford* court was that under their statute, Ariz. Rev. Stat. Ann. § 13–105(7), which defined dangerous instrument as "'anything that under the circumstances in which it is used, . . . is readily capable of causing death or serious physical injury'", most household items could conceivably be used as deadly weapons and the result would be to classify most every burglary as first degree. *State v. Befford, supra* at 510. The Arizona statutory deadly weapon definition also specifically includes a firearm and further defines it to include a loaded or *unloaded* pistol, revolver, rifle or shotgun. *State v. Befford, supra* at 509.

Apparently the *Befford* court did not wish to treat firearms differently from other items taken, as would be possible under its statute and under RCW 9A.04.110(6). The

State argues two classifications of deadly weapons are defined in RCW 9A.04.110(6). The first class of deadly weapons is specifically defined to include "any explosive or loaded or unloaded firearm". A second class of deadly weapons is defined generally to "include any other weapon . . . instrument . . . which, under the circumstances in which it is used, attempted to be used, or threatened to be used, is readily capable of causing death or serious bodily injury". The State argues the first classification defines per se dangerous weapons and no analysis of willingness or present ability to use a firearm as a deadly weapon is needed. We agree. For purposes of first degree burglary, the defendant is armed with a deadly weapon if a firearm is "easily accessible and readily available for use by the defendant for either offensive or defensive purposes." *State v. Sabala, supra* at 448.

Our courts have recognized that one of the purposes of providing greater punishment when a deadly weapon is involved in a crime is that there is a potential for inflicting violence. *State v. Hattori,* 19 Wn. App. 74, 82, 573 P.2d 829 (1978) held that an unloaded gun can easily be loaded during the commission of a crime; consequently, an unloaded gun has the same potential for violence as a loaded gun and therefore is a firearm for purposes of an enhanced penalty under former RCW 9.41.025. Although RCW 9.41.025 is not applicable to Mr. Hall, the policy of providing greater punishment when a deadly weapon is involved is applicable to a first degree burglary analysis.

Here, Mr. Hall and Mr. Helland removed a rifle, pistol and ammunition for the rifle from a house they were burglarizing and carried the items to their car, where they placed them in the trunk. While Mr. Hall and Mr. Helland were in the residence or transporting the firearms to the car, there was a possibility of violence to anyone discovering the burglary in progress. In such an event, the rifle and ammunition were not only easily accessible and available for use, they were in the possession of the defendants and ready for use, which is more than is required to be armed

with a deadly weapon. In this situation, we hold Mr. Hall was armed with a deadly weapon and thus guilty of first degree burglary.

The judgment of the Superior Court is affirmed.

GREEN and MUNSON, JJ., concur.

Review denied by Supreme Court March 31, 1987.