# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | NO. 68936-3-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| VICTOR CERVANTES, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: July 15, 2013 |

LAU, J. — When a principal or an accomplice removes a firearm from a home during a burglary, he or she is "armed with a deadly weapon" for purposes of first degree burglary. Because Victor Cervantes or a coparticipant removed a handgun from Michelle Richie's home during the burglary, we affirm his first degree burglary conviction. And because sufficient evidence supports accomplice liability under the general theft statute, that evidence also supports accomplice liability for theft of a firearm. We find no error in the trial court's use of Washington Pattern Jury Instruction (WPIC) 4.01's reasonable doubt instruction. We affirm Cervantes's first degree burglary and theft of a firearm convictions.

## FACTS

On July 28, 2011, Richie saw an unfamiliar car parked near her house as she pulled into her driveway. She saw Cervantes approaching from the side of her house

and used her cell phone to call her husband. She questioned Cervantes about his presence at the house. Cervantes said the house was unlocked. Richie responded, "[T]here's no reason to be going through anyone's house." Verbatim Report of Proceedings (VRP) (May 14, 2012) at 32. After her husband answered the phone, Richie told him Cervantes's license plate number. Cervantes shouted profanities and struck the right side of Richie's head, scratching her face. Cervantes grabbed her phone and fled in his car. Richie noticed two men run from the back of her house and escape through a fence.

Richie and her husband met Skagit County Sheriff's deputies outside the house. Richie noticed damage to the front door frame. Later, she noticed a loaded handgun missing from the nightstand drawer in the master bedroom. Other valuable items, including a television, video game systems, a laptop, and jewelry remained untouched.

Sheriff deputies never recovered Richie's gun and cell phone. They later arrested Cervantes but never identified the other two men.

A jury found Cervantes guilty of first degree burglary, first degree robbery, and theft of a firearm. The trial court sentenced Cervantes to 66 months' confinement. Cervantes appeals his first degree burglary and theft of a firearm convictions but not his first degree robbery conviction.

## ANALYSIS

Cervantes argues (1) insufficient evidence to support the first degree burglary conviction because the State failed to prove that he or a coparticipant was "armed with a deadly weapon" under RCW 9A.52.020(1)(a)'s first degree burglary statute; (2) insufficient evidence to support the theft of a firearm conviction because he lacked

knowledge that the men planned to steal a gun; and (3) the reasonable doubt instruction is erroneous.

### Standard of Review

To determine whether sufficient evidence exists to support a conviction, we ask "'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found sufficient evidence to justify that conclusion beyond a reasonable doubt.'" State v. Davis, 175 Wn.2d 287, 346, 290 P.3d 43 (2012) (quoting State v. Yates, 161 Wn.2d 714, 786, 168 P.3d 359 (2007)). "[A]ll reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Circumstantial evidence and direct evidence carry equal weight. State v. Goodman, 150 Wn.2d 774, 781, 83 P.3d 410 (2004). "[T]he specific criminal intent of the accused may be inferred from the conduct where it is plainly indicated as a matter of logical probability." State v. Delmarter, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).

### First Degree Burglary

Under RCW 9A.52.020(1),

[a] person is guilty of burglary in the first degree if, with intent to commit a crime against a person or property therein, he or she enters or remains unlawfully in a building and if, in entering or while in the building or in immediate flight therefrom, the actor or another participant in the crime . . . is armed with a deadly weapon . . . .[1]

---

[1] The court did not instruct the jury that first degree burglary also occurs when the defendant "assaults any person" during the commission. RCW 9A.52.020(1)(b).

The legislature defined the phrase "deadly weapon"[2] but not the term "armed." Cervantes claims to prove "armed" requires the State to show a willingness and present ability to use the gun.

In State v. Hall, 46 Wn. App. 689, 732 P.2d 524 (1987), the defendant was convicted of first degree burglary on evidence that he and another man removed an unloaded rifle and ammunition from a house. Division Three of this court defined the principal issue:

> [W]hether possession of firearms taken in the course of a burglary constitutes being "armed with a deadly weapon" as required by RCW 9A.52.020(1)(a) for conviction of first degree burglary, when the guns are not loaded, but ammunition is taken as well, and the guns and ammunition are transported to the trunk of a car.

Hall, 46 Wn. App. at 693. Finding no controlling Washington case law, the court adopted the definition of "armed" from a case involving a deadly weapon sentence enhancement. The court concluded that a defendant is armed for purposes of the first degree burglary statute if "a weapon is 'easily accessible and readily available for use by the defendant for either offensive or defensive purposes.'" Hall, 46 Wn. App. at 694 (quoting State v. Sabala, 44 Wn. App. 444, 448, 723 P.2d 5 (1986)). The court specifically rejected Hall's contention that "armed" requires evidence that the accused must use the deadly weapon in a manner indicating a willingness or present ability to

---

[2] Under RCW 9A.04.110(6), "'[d]eadly weapon' means any explosive or loaded or unloaded firearm, and shall include any other weapon, device, instrument, article, or substance, including a "vehicle" as defined in this section, which, under the circumstances in which it is used, attempted to be used, or threatened to be used, is readily capable of causing death or substantial bodily harm."

use it.[3] The court then held that if the weapon at issue is per se dangerous (i.e., all firearms), then "no analysis of willingness or present ability to use a firearm as a deadly weapon is needed." Hall, 46 Wn. App. at 695; accord State v. Speece, 56 Wn. App. 412, 416, 783 P.2d 1108 (1989), aff'd 115 Wn.2d 360, 798 P.2d 294 (1990). The court concluded, "For purposes of first degree burglary, the defendant is armed with a deadly weapon if a firearm is 'easily accessible and readily available for use by the defendant for either offensive or defensive purposes.'" Hall, 46 Wn. App. at 695 (quoting Sabala, 44 Wn. App. at 448).

Hall concluded that the defendant's removal of the rifle and ammunition was "more than is required to be armed with a deadly weapon." Hall, 46 Wn. App. at 695-96. The court noted that the ready availability of the rifle and ammunition created "a possibility of violence to anyone discovering the burglary in progress." Hall, 46 Wn. App. at 695.

In State v. Faille, 53 Wn. App. 111, 766 P.2d 478 (1988), we applied Hall's rationale to resolve a similar armed with a deadly weapon issue. The evidence established that Faille and an accomplice took unloaded guns and other property from a house and stashed them in nearby bushes. Faille, 53 Wn. App. at 112. On appeal, Faille argued that since he took unloaded firearms during the burglary, they were not easily accessible or readily available and he possessed no intent to load or use them, as required under the armed with a deadly weapon burglary first degree statute. Relying on Hall's rationale, we held that sufficient evidence supported the defendant's

---

[3] In Sabala, the defendant possessed a loaded pistol found directly under the driver's seat.

first degree burglary conviction. Faille, 53 Wn. App. at 115. We concluded, "[T]he guns were readily accessible and available for use, even though they were unloaded and there is no evidence that Faille knew there was ammunition in the house." Faille, 53 Wn. App. at 115.

Relying on State v. Brown, 162 Wn.2d 422, 173 P.3d 245 (2007), Cervantes argues that "armed" requires more than removal of a gun from a home during a burglary. He asserts the State must establish that the defendant or accomplice intended to or was willing to use the weapon to further the crime.

In Brown, the evidence established that Brown or his accomplice merely moved an unloaded rifle from a closet to a nearby bed. They also removed property from under the bed but left a pistol untouched. Brown, 162 Wn.2d at 430-31. Later, Brown and his accomplice talked about guns and "expressed a desire to have gotten the guns," but said nothing "indicating that either of them moved the rifle or knew of its existence during the crime." Brown, 162 Wn.2d at 431. The court viewed the dispositive issue as "whether under these facts, where a weapon was moved during a burglary, if that evidence is sufficient to establish that a defendant is armed." Brown, 162 Wn.2d 431. Reversing Brown's conviction, the court reasoned:

> mere close proximity of the weapon to the defendant, or constructive possession alone is insufficient to show that the defendant is armed. . . .
> Here, the crime was burglary and the type of weapon was a rifle at the scene. However, the circumstance under which the weapon was found does not support a conclusion that Brown was "armed" as intended by the legislature. . . . No evidence exists that Brown or his accomplice handled the rifle on the bed at any time during the crime in a manner indicative of an intent or willingness to use it in furtherance of the crime. In fact, Hill's testimony indicates that the weapon here was regarded as nothing more than valuable property.

Brown, 162 Wn.2d 431-32.

-6-

Unlike in Brown, Cervantes and his coparticipants removed the gun from the home and left other valuable property behind. In responding to the dissent's criticism of the intent or willingness to use the weapon requirement, the majority left intact the Hall and Faille rationale, discussed above, "because in those cases weapons were removed from the homes." Brown, 162 Wn.2d at 250 n.4. The circumstances here are nearly identical to Hall and Faille.[4]

Finally, in In re Personal Restraint of Martinez, 171 Wn.2d 354, 256 P.3d 277 (2011),[5] a case addressing whether the knife used in a burglary constituted a deadly weapon, the court cited Hall with approval:

> Conversely, State v. Hall, 46 Wn. App. 689, 732 P.2d 524 (1987), involved deadly weapons per se, namely firearms taken in the course of a burglary. Because the firearm was a deadly weapon per se, Division Three reasoned that "no analysis of willingness or present ability to use a firearm as a deadly weapon" was necessary under RCW 9A.04.110(6). Id. at 695; see also State v. Speece, 56 Wn. App. 412, 416, 783 P.2d 1108 (1989) (no inquiry into willingness or present ability to use weapon is necessary for deadly weapon per se); State v. Faille, 53 Wn. App. 111, 766 P.2d 478 (1988) (sufficient evidence to sustain first degree burglary conviction where defendant was in possession of unloaded firearms but did not intend to use them).

Martinez, 171 Wn.2d at 367. We conclude sufficient evidence supports Cervantes's first degree burglary conviction.

Theft of a Firearm

Cervantes argues insufficient evidence to support his accomplice liability for theft of a firearm. This claim fails because the evidence viewed in the light most favorable to

---

[4] The State relies on State v. Hernandez, 172 Wn. App. 537, 290 P.3d 1052 (2012), but that case is pending review before our Supreme Court.

[5] We note that neither party cites to Martinez.

the State shows that Cervantes acted with general knowledge that he was promoting or facilitating the theft of a firearm.

Under Washington's accomplice liability statute, a person is guilty of a crime committed by another's conduct if he or she is an "accomplice of such other person in the commission of the crime." RCW 9A.08.020(2)(c). The statute defines "accomplice" as follows:

> (3) A person is an accomplice of another person in the commission of a crime if:
> (a) With knowledge that it will promote or facilitate the commission of the crime, he or she:
> (i) Solicits, commands, encourages, or requests such other person to commit it; or
> (ii) Aids or agrees to aid such other person in planning or committing it; or
> (b) His or her conduct is expressly declared by law to establish his or her complicity.

RCW 9A.08.020(3). This definition indicates that the legislature "intended the culpability of an accomplice not extend beyond the crimes of which the accomplice actually has 'knowledge,' the mens rea of RCW 9A.08.020." State v. Roberts, 142 Wn.2d 471, 511, 14 P.3d 713 (2000) (disapproving jury instruction stating in part, "'A person is legally accountable for the conduct of another person when he is an accomplice of such other person in the commission of a crime.'") (emphasis added)).

Though an accomplice must act with knowledge that he or she is promoting or facilitating the charged crime, he or she "need not have knowledge of each element of the principal's crime in order to be convicted under RCW 9A.08.020." Roberts, 142 Wn.2d at 513. "General knowledge of 'the crime' is sufficient." Roberts, 142 Wn.2d at 513. Accordingly, an accomplice need not act with knowledge that he or she is

-8-

promoting or facilitating a particular degree of the charged crime. State v. Cronin, 142 Wn.2d 568, 581-82, 14 P.3d 752 (2000).

Here, the charged crime was theft of a firearm. "A person is guilty of theft of a firearm if he or she commits a theft of any firearm." RCW 9A.56.300(1). A "firearm" is "a weapon or device from which a projectile or projectiles may be fired by an explosive such as gunpowder." RCW 9.41.010(7); RCW 9A.56.300(5). There is no dispute that Cervantes or one of the men removed a "firearm" from Richie's house.

The evidence supports accomplice liability if Cervantes aided another person in planning or committing the theft of a firearm, with general knowledge that he was promoting or facilitating that crime. RCW 9A.08.020(3); Roberts, 142 Wn.2d at 513. The parties disagree whether any of the men specifically intended to steal a gun. But Cervantes does not dispute, nor could he, that the evidence was sufficient to sustain accomplice liability under the general theft statute, RCW 9A.56.020 - .050.[6]

The evidence viewed in the light most favorable to the State establishes that Cervantes drove two men to Richie's house and at least two of them broke in to look for items to steal. Inside the house, the men opened a laundry room cabinet, a dresser drawer, and a nightstand drawer. One of the men took a gun hidden under a stack of clothing in the nightstand drawer. The men fled when Richie interrupted the burglary. Cervantes aided their escape by attacking Richie and grabbing her phone when she tried to relay license plate information to her husband. From this evidence, a rational trier of fact could find that Cervantes was at least an accomplice to theft.

---

[6] Under RCW 9A.56.020(1)(a), "theft" means: "To wrongfully obtain or exert unauthorized control over the property or services of another or the value thereof, with intent to deprive him or her of such property or services . . . ."

The core issue is whether evidence sufficient to sustain accomplice liability for "theft" is also sufficient to sustain accomplice liability for "theft of a firearm," when the only property taken is a gun. Relying on Roberts and Cronin, Cervantes maintains that because theft and theft of a firearm are technically different crimes, an accomplice to theft is not an accomplice to theft of a firearm. The State argues that for purposes of accomplice liability, no principled distinction exists between theft and theft of a firearm.

Although theft and theft of a firearm are different crimes, the offenses are closely related. As originally enacted, the theft of a firearm statute did not define theft. See LAWS OF 1994, 1st Spec. Sess., ch. 7, § 432. But in 1995, as part of the Hard Time for Armed Crime Act (Initiative 159), the legislature clarified, "The definition of 'theft' and the defense allowed against the prosecution for theft under RCW 9A.56.020 [the general theft statute] shall apply to the crime of theft of a firearm." LAWS OF 1995, ch. 129, § 10 (emphasis added), now codified as RCW 9A.56.300(4); see State v. Miller, 92 Wn. App. 693, 705, 964 P.2d 1196 (1998). Thus, as a substantive matter, theft of a firearm is simply a "theft" where the property taken is a gun. We conclude that, for purposes of Cervantes's accomplice liability under Roberts and Cronin, the "crime charged" is theft.

Cervantes argues that theft of a firearm is distinct from theft for purposes of accomplice liability because the former carries a higher seriousness level than any degree of theft. But the potential for punishment is hardly dispositive. In Sarausad v. State, 109 Wn. App. 824, 39 P.3d 308 (2001), we reasoned that a defendant who generally knows he or she is facilitating a homicide can be convicted as an accomplice to first degree murder, second degree murder, or manslaughter. Sarausad, 109 Wn. App. at 836. The vast range of punishments associated with these crimes shows that

the potential for punishment is not a reliable indicator of whether separate crimes are distinct for purposes of accomplice liability under Roberts and Cronin.

The critical factor is the conduct that forms the basis for a set of crimes. The Roberts court established this principle by relying on the comment to Model Penal Code § 2.06(3)(a), which is identical to Washington's accomplice liability statute. The Model Penal Code comment states that an accomplice is one who has "'the purpose to promote or facilitate the particular conduct that forms the basis for the charge . . . .'" Roberts, 142 Wn.2d at 510 (quoting MODEL PENAL CODE § 2.06, cmt. 6(b) (1985)). Here, the "particular conduct" that forms the basis for both theft and theft of a firearm is the same—both crimes require a "theft," as defined by the general theft statute (RCW 9A.56.020). Theft of a firearm is distinguishable from theft only by the nature of the property taken. Sufficient evidence supports Cervantes's theft of a firearm conviction.

<u>Jury Instruction</u>

Cervantes contends jury instruction 3 misstates the reasonable doubt standard. The instruction provides, in part:

> A reasonable doubt is one for which a reason exists and may arise from the evidence or lack of evidence. It is such a doubt as would exist in the mind of a reasonable person after fully, fairly, and carefully considering all of the evidence or lack of evidence. If, from such consideration, you have an abiding belief in the truth of the charge, you are satisfied beyond a reasonable doubt.

He argues that the instruction misstates the reasonable doubt standard by "equating proof beyond a reasonable doubt with a 'belief in the truth' of the charge . . . ."[7] Br. of

---

[7] To the extent Cervantes argues that the prosecutor committed misconduct by paraphrasing and discussing instruction 3's "abiding belief" language during closing arguments, the argument is inadequately briefed. See Palmer v. Jensen, 81 Wn. App.

Appellant at 16. The court's instruction used WPIC 4.01's reasonable doubt definition, which our Supreme Court expressly approved in State v. Bennett, 161 Wn.2d 303, 165 P.3d 1241 (2007). In Bennett, the court stated, "Trial courts are instructed to use the WPIC 4.01 instruction to inform the jury of the government's burden to prove every element of the charged crime beyond a reasonable doubt." Bennett, 161 Wn.2d at 318.

Cervantes argues that Bennett's unequivocal approval of WPIC 4.01 was called into doubt by the Supreme Court's recent decision in State v. Emery, 174 Wn.2d 741, 760, 278 P.3d 653 (2012). In Emery, the prosecutor stated during closing arguments that the jury's verdict "'should speak the truth.'" Emery, 174 Wn.2d at 751. On appeal, the court held that the reference to truth was improper, but any error was harmless. Emery, 174 Wn.2d at 765. The court's opinion contained no discussion of WPIC 4.01 or its "abiding belief" language. The claim fails under Bennett.

## CONCLUSION

For the reasons discussed above, we affirm Cervantes's convictions.

WE CONCUR:

---

148, 153, 913 P.2d 413 (1996) ("Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration.").