

FILED

Apr 12 2017, 9:15 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Curtis T. Hill, Jr.
Attorney General of Indiana

Ian McLean
Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Mark Small
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| State of Indiana,<br>*Appellant-Plaintiff,*<br><br>v.<br><br>Amber E. McHenry,<br>*Appellee-Defendant.* | April 12, 2017<br><br>Court of Appeals Case No.<br>35A04-1609-CR-2080<br><br>Appeal from the Huntington Circuit Court.<br>The Honorable Thomas M. Hakes, Judge.<br>The Honorable Karen A. Springer, Senior Judge.<br>Cause No. 35C01-1605-F2-76 |

**Friedlander, Senior Judge**

[1] The State of Indiana appeals the trial court's grant of Amber McHenry's motion to dismiss her Level 2 felony charge of burglary while armed with a deadly weapon, in which the trial court essentially determined that a handgun obtained in the course of a burglary cannot support the elevated charge of burglary while

armed with a deadly weapon under Indiana Code section 35-43-2-1(3)(A). We affirm.

[2] The State presents one issue for our review, which we restate as: whether the trial court erred when it granted McHenry's motion to dismiss the charge of burglary while armed with a deadly weapon.

[3] In October 2015, Andrew Stoffel returned home to discover that his residence had been burglarized and that a handgun with three magazines and a safe containing coins and other small items had been taken. In May 2016, McHenry was charged with Count 1 burglary as a Level 2 felony and Count 2 burglary as a Level 4 felony[1] for her alleged involvement in the crime.

[4] The following August, McHenry filed a motion to dismiss the Level 2 felony charge of burglary while armed with a deadly weapon, claiming that because the handgun was obtained in the course of the burglary it could not serve to elevate the burglary charge. Following a hearing, the trial court granted McHenry's motion. The State then filed a motion to stay the proceedings, which the trial court also granted. The State now appeals the trial court's grant of McHenry's motion to dismiss, and we are thus called upon to interpret Indiana Code section 35-43-2-1(3)(A).

---

[1] Ind. Code § 35-43-2-1(3)(A) and (1) (2014).

[5] The primary purpose of statutory interpretation is to determine and give effect to the intent of the legislature. *Adams v. State*, 960 N.E.2d 793 (Ind. 2012). The best evidence of legislative intent is the language of the statute itself. *Chambliss v. State*, 746 N.E.2d 73 (Ind. 2001). If the language of the statute is clear and unambiguous, we must apply its plain and ordinary meaning without resort to any other rules of statutory construction. *Adams*, 960 N.E.2d 793.

[6] When a statute is susceptible to more than one reasonable interpretation, it is ambiguous, and we resort to the rules of statutory construction in order to give effect to the legislature's intent. *Id.* Penal statutes must be construed strictly against the State, with any ambiguities resolved in favor of the defendant. *Chastain v. State*, 58 N.E.3d 235 (Ind. Ct. App. 2016), *trans. denied*. Criminal statutes should not be enlarged by construction beyond their fair meaning; yet, they should not be so narrowly construed as to exclude cases they fairly encompass. *Id.*

[7] Indiana Code 35-43-2-1(3)(A) provides:

> A person who breaks and enters the building or structure of another person, with intent to commit a felony or theft in it, commits burglary, a Level 5 felony. However, the offense is:
>
> . . . .
>
> (3) a Level 2 felony if it:
>
> (A) is committed while armed with a deadly weapon . . . .

Initially, we note that our statute, by its terms "committed while armed with," does not contemplate the situation in which a burglar enters unarmed and thereafter becomes armed. This is a distinguishing feature from the statutes of

other jurisdictions whose language was crafted to include just such a situation. *See, e.g.*, ALASKA STAT. ANN. § 11.46.300 (West 1978) ("in effecting entry or while in the building or immediate flight from the building, the person is armed with"); S.C. CODE ANN. § 16-11-311 (1995) ("when, in effecting entry or while in the dwelling or in immediate flight, he . . . is armed with"); and WASH. REV. CODE ANN. § 9A.52.020 (West 1996) ("if, in entering or while in the building or in immediate flight therefrom, the actor or another participant in the crime . . . is armed with").

[8] Turning to the other terms of our statute, there is no dispute that a handgun qualifies as a "deadly weapon" as that term includes "[a] loaded or unloaded firearm." *See* Ind. Code § 35-31.5-2-86(a)(1) (2012). The term "armed," however, has not been legislatively defined in Indiana for purposes of the burglary statute. Caselaw, too, is sparse regarding a sanctioned definition of the term. Speaking very briefly on the term in a footnote, this Court remarked that it is not a technical word and should be construed in its ordinary sense. The Court then stated that the term "describes the state of being 'equipped' or 'furnished' with weapons." *Roddy v. State*, 182 Ind. App. 156, 174, 394 N.E.2d 1098, 1110 n.24 (1979) (citing Webster's Seventh New Collegiate Dictionary p. 48 (1970)). Indeed, there is nothing in our burglary statute to indicate that this term is meant to have anything other than a plain and ordinary meaning. While accepting the definition noted by *Roddy*, we also give due regard to a more recent version of the dictionary definition in which the term "armed" is defined as "furnished with weapons" or "using or involving a weapon." *See*

https://www.merriam-webster.com/dictionary/armed (last visited March 27, 2017).

[9] We think it necessary at this juncture to remark upon the fact that few courts have troubled to define "armed" while construing their burglary statutes. Rather, they have simply held that certain conduct during a burglary constitutes being armed with little or no discussion as to the meaning of that term within the confines of the particular statute and without regard to the principles of statutory construction. A review of these decisions reveals a consensus to consider a defendant to be armed if the weapon is "easily accessible and readily available for use by the defendant for either offensive or defensive purposes." *See People v. Loomis*, 857 P.2d 478, 482 (Colo. App. 1992), *cert. denied* (1993); *State v. Merritt*, 247 N.J. Super. 425, 589 A.2d 648, 650 (App. Div. 1991); *State v. Padilla*, 122 N.M. 92, 920 P.2d 1046, 1049 (N.M. Ct. App. 1996), *cert. denied* (1996); *State v. McCaskill*, 321 S.C. 283, 468 S.E.2d 81, 82 (Ct. App. 1996); *State v. Hall*, 46 Wash. App. 689, 732 P.2d 524, 528 (1987). *See also State v. Romero*, 135 Ariz. 102, 659 P.2d 655, 658 (Ct. App. 1982) (person is armed when weapon is within immediate control and available for use). This interpretation, however, is not suggested by our statutory language. We are tasked with ascertaining the intent of the legislature within the purview of our rules of statutory construction, and we will not over-step these bounds by adopting a definition of a statutory term that is not developed according to these guidelines.

[10] In this case, the facts are not as fully developed because there has not yet been a trial. Therefore, the facts presented here are gleaned from the materials provided on appeal, primarily the statements of the victim and two of McHenry's accomplices, Robert Boothby and Roger Mitchell. These materials reveal that a third accomplice, Rolly Dulworth, had been hired by the victim, Andrew Stoffel, to perform some odd jobs at Stoffel's residence. Appellant's App. p. 12. Two weeks prior to the burglary, Dulworth was at Stoffel's home, and Stoffel showed him the handgun. *Id.* at 13.

[11] On the day of the burglary, according to Dulworth, McHenry needed some heroin, and she called Boothby to pick up her, Dulworth, and Mitchell. *Id.* at 22. Boothby picked up McHenry, Dulworth, and Mitchell at Mitchell's house and drove them all to Stoffel's residence. *Id.* at 16. McHenry, Dulworth, and Mitchell went into the house while Boothby waited outside in his vehicle. *Id.* Once inside, Dulworth told the others about the handgun. *Id.* at 22. McHenry and Dulworth went into the bedroom and found the gun. *Id.* at 25. McHenry exited the house with the gun in a bag, Dulworth had coins, and Mitchell had a bag of tools. *Id.* at 16. Boothby then drove them to another house, where McHenry traded the gun for heroin. *Id.* at 16, 25. An investigating officer asked Mitchell why McHenry's name continually came up with regard to illegal activities in the area, and Mitchell replied, "Heroin is [McHenry]'s only friend." *Id.* at 25.

[12] Applying "using or involving a weapon" as the plain meaning of the term "armed," we observe that a person is not armed merely by virtue of possessing a

weapon. Rather, there must be something more indicating the use or involvement of the weapon in the crime. The evidence here does not indicate that McHenry handled the gun in a manner indicative of using it or involving it in the crime in any way. On the contrary, her sole objective appears to have been the theft of items that could be traded for drugs. McHenry removed the handgun from the scene of the burglary in a bag and shortly thereafter took it to a drug dealer with whom she traded the gun for drugs. Thus, the facts before us suggest the gun was regarded as nothing more than "loot" or valuable property, not unlike the coins and tools, to be used to obtain drugs rather than a weapon to be used in furtherance of the crime.

[13] We acknowledge that many jurisdictions have reached the conclusion that, in general, a defendant who enters a building or dwelling unarmed and acquires a gun or other deadly weapon during the commission of a burglary therein is considered to be armed for purposes of that state's burglary statute. *See, e.g.*, *Pardue v. State*, 571 So.2d 333 (Ala. 1990), *holding ltd. on other grounds by Ex parte Bates*, 709 So.2d 1115 (Ala. 1997); *Wesolic v. State*, 837 P.2d 130 (Alaska Ct. App. 1992); *State v. Tabor*, 184 Ariz. 119, 907 P.2d 505 (Ct. App. 1995); *Loomis*, 857 P.2d 478; *State v. Rozmyslowicz*, 52 Conn. App. 149, 726 A.2d 142 (1999); *Donophan v. State*, 424 A.2d 301 (Del. 1980); *Williams v. State*, 13 Fla. L. Weekly 16, 517 So.2d 681 (Fla. 1988); *Daugherty v. Commonwealth*, 572 S.W.2d 861 (Ky. 1978); *State v. Crews*, 968 S.W.2d 763 (Mo. Ct. App. 1998); *Merritt*, 247 N.J. Super. 425, 589 A.2d 648; *State v. Luna*, 99 N.M. 76, 653 P.2d 1222 (Ct. App. 1982), *cert. quashed* (1982); *McCaskill*, 321 S.C. 283, 468 S.E.2d 81; *State v. Faille*,

53 Wash. App. 111, 766 P.2d 478 (1988); and *Britt v. State*, 734 P.2d 980 (Wyo. 1987). Nevertheless, we conclude that, pursuant to the plain language of our statute, the degree of the offense of burglary does not change as a result of the nature of the items stolen. Indeed, it seems illogical that the defendant who steals a gun is charged with a higher level felony than a defendant who steals other items, such as coins or tools, even though the crimes are committed in the same, unarmed manner. Thus, we hold that a defendant who obtains a handgun as loot during the course of a burglary has not "armed" him or herself as that term is used in Indiana Code section 35-43-2-1(3)(A).

[14] Having concluded that Indiana Code section 35-43-2-1(3)(A) does not fairly encompass within its language McHenry's taking of the handgun from the burglary of Stoffel's residence, we affirm the trial court's grant of her motion to dismiss the Level 2 felony charge of burglary while armed with a deadly weapon.

[15] Judgment affirmed.

Bailey, J., and Brown, J., concur.