FILED
COURT OF APPEALS
DIVISION II

2015 AUG 26  PM 12: 53

STATE OF WASHINGTON

BY_____
        DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 45058-5-II |
| Respondent, | |
| v. | |
| SOEUN SUN, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, C.J. — A jury found Soeun Sun guilty of first degree burglary, first degree conspiracy to commit first degree burglary, and several related firearm and trafficking offenses with accompanying firearm enhancements. Soeun Sun appeals his convictions, arguing that (1) the State unlawfully seized evidence, (2) there was insufficient evidence that Soeun Sun was armed with a firearm, (3) the trial court committed several instructional errors, (4) counsel was ineffective, and (5) the trial court violated Soeun Sun's speedy trial right. He also appeals his sentence, arguing that (6) imposition of the Persistent Offender Accountability Act of the Sentencing Reform Act of 1981, ch. 9.94A RCW, violated Soeun Sun's right to due process and right to equal protection. We reject his arguments that (1) insufficient evidence supports his convictions, (2) the trial court improperly instructed the jury, and (3) his speedy trial right was violated. In addition, we decline to reach his ineffective assistance of counsel claim and the several sentencing issues he raises. However, we hold that Soeun Sun was unlawfully seized and that the

fruits of the unlawful seizure must be suppressed. Accordingly we vacate the trial court's order denying Soeun Sun's motion to suppress, reverse his convictions, and remand for further proceedings consistent with this opinion.

FACTS

I. BACKGROUND

On December 17, 2011, Fife Police Officer Thomas Vradenburg investigated a burglary at Sportco, a Fife sporting goods store. An inventory revealed that a total of 42 guns had been stolen. Detective Jeff Nolta reviewed surveillance videos captured by Sportco's security system showing a white vehicle driving back and forth and stopping near the Sportco several times between 3:00 AM and 3:30 AM. Sportco surveillance videos showed two people entering the store and running toward the gun display cases.

Coincidentally, Fife Police Officer Ryan Micenko ran the license plate information of the suspicious white vehicle approximately 20 minutes before the Sportco alarms triggered. The vehicle, a white Honda, was registered to Phalay Soeung at a Tacoma address on Yakima Avenue.

Later, Detective Nolta received information that an individual named David Bunta had been involved in the Sportco burglary. Fife police surveilled Bunta's home, workplace, and car. On December 27, Fife police officers followed Bunta to the same Yakima Avenue address where the white Honda was registered. Outside the Yakima Avenue home, police observed the white Honda that was seen near Sportco on the night of the crime.

The following day, police arrested Bunta and searched his car and person incident to that arrest. Police found two black ski masks, a 9 mm pistol, a global positioning system unit, two rolls

2

of duct tape, and four pairs of gloves. Bunta confessed to participating in the Sportco burglary and admitted that others were involved, but he refused to identify his cohorts.

Later that day, 11 days after the burglary took place, police surveilled the white Honda at the Yakima Avenue address. That evening, police observed a man approach the white Honda carrying a small object that appeared to be wrapped in a blanket. According to the officers, the man, later identified as Soeun Sun, looked around suspiciously before opening the trunk and placing the unknown item inside. Officers then followed Soeun Sun as he drove from the residence in the white Honda. Soeun Sun arrived at a nearby gas station, parked, and began to pump gas. Officers approached Soeun Sun with drawn guns and handcuffed him.

Detectives frisked Soeun Sun for weapons and asked him to identify himself. Soeun Sun initially gave false names and dates of birth. Officers continued to ask questions, suspecting that Soeun Sun was not telling the truth because the false information he provided was not found in the computer system. Police established Soeun Sun's true identity when one of the officers recognized him from previous encounters. Police determined that Soeun Sun had an outstanding Department of Corrections warrant and arrested him.

After officers read *Miranda*[1] rights, Soeun Sun admitted that he lived at the Yakima Avenue address. Police obtained and executed a search warrant for the white Honda where they found a pistol wrapped in a towel inside a backpack in the vehicle's trunk. A former Sportco employee identified the gun found in Soeun Sun's vehicle as one stolen during the burglary.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Officers also found ammunition and gloves in the car along with various documents featuring Soeun Sun's name. And a search of Soeun Sun's cell phone revealed several messages relating to potential firearms transactions. A search of the Yakima Avenue address revealed another 9 mm pistol. This pistol was also one of the guns stolen in the Sportco burglary.

## II. PROCEDURE

By amended information, the State charged Soeun Sun with one count of first degree unlawful possession of a firearm, one count of theft of a firearm, one count of first degree burglary, one count of conspiracy to commit first degree burglary, one count of first degree trafficking in stolen property, and one count of conspiracy to commit first degree trafficking in stolen property.[2] Before trial, the trial court denied Soeun Sun's motion to suppress all evidence obtained as a result of what he deemed an unlawful *Terry*[3] stop.

During trial, the State presented the testimony of several witnesses who were related to Soeun Sun and who were connected to the alleged burglary and subsequent distribution of the stolen firearms. The State also called T.J. Wells, a former gun salesman at Sportco. Wells recalled seeing three suspicious individuals wearing hoods and dark clothing on the day before the burglary. Wells remembered seeing the suspicious men examining the guns in the display case from which they were later stolen. According to Wells, one of the men had a visible tattoo of writing or scripture on his neck. Soeun Sun has such a tattoo. Wells also testified that all of the guns were operable firearms. Soeun Sun did not testify.

---

[2] *See* RCW 9.41.040(1)(a); RCW 9A.56.300(1); RCW 9A.52.020(1)(a); RCW 9A.28.040; RCW 9A.82.050(1).

[3] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

The jury found Soeun Sun guilty of all counts and answered "yes" to the four special verdict forms finding that Soeun Sun or an accomplice was armed with a firearm during the commission of those offenses.[4] The trial court sentenced Soeun Sun to life in prison without the possibility of parole as a persistent offender on the burglary, conspiracy, and trafficking counts. Soeun Sun appeals.

## ANALYSIS

### I. UNLAWFUL SEIZURE

Soeun Sun contends that the evidence obtained as a result of his seizure and subsequent arrest should have been suppressed because police did not have reasonable suspicion to conclude that Soeun Sun was involved in any criminal activity. We agree. We hold that the trial court erred as a matter of law by denying Soeun Sun's motion to suppress because the officers lacked a reasonable, particularized suspicion that Soeun Sun was involved in criminal activity.

### A. LEGAL PRINCIPLES

We review conclusions of law in an order pertaining to suppression of evidence de novo.[5] *State v. Arreola*, 176 Wn.2d 284, 291, 290 P.3d 983 (2012). Warrantless disturbances of private affairs are subject to a high degree of scrutiny. Our Supreme Court has explained that Washington

---

[4] The jury determined that Soeun Sun was armed with a firearm at the time he committed the first degree burglary, conspiracy to commit first degree burglary, first degree tracking in stolen property, and conspiracy to commit first degree trafficking in stolen property.

[5] The record does not contain written findings of fact or conclusions of law regarding the suppression motion. Although failure to enter findings of fact and conclusions of law is error, such error is harmless if the trial court's oral findings are sufficient to permit appellate review. *State v. Weller*, 185 Wn. App. 913, 923, 344 P.3d 695, *review denied*, No. 91406-1 (Wash. July 8, 2015). Here, the trial court provided a detailed oral ruling from which we can identify the findings it used to support its conclusion.

State Constitution article I, section 7 protects "'those privacy interests which citizens of this state have held, and should be entitled to hold, safe from governmental trespass absent a *warrant*.'" *State v. Ladson*, 138 Wn.2d 343, 349, 979 P.2d 833 (1999) (quoting *State v. Myrick*, 102 Wn.2d 506, 511, 688 P.2d 151 (1984)). Thus, we presume that a warrantless search or seizure violates article I, section 7 unless the State shows that the search or seizure falls "'within certain narrowly and jealously drawn exceptions to the warrant requirement.'" *Arreola*, 176 Wn.2d at 292 (internal quotation marks omitted) (quoting *State v. Day*, 161 Wn.2d 889, 894, 168 P.3d 1265 (2007)). The State must establish an exception to the warrant requirement by clear and convincing evidence. *State v. Garvin*, 166 Wn.2d 242, 250, 207 P.3d 1266 (2009).

The categories of narrow exceptions recognized by our courts include investigative stops. *Arreola*, 176 Wn.2d at 292. To be constitutional under article I, section 7 as an investigative stop, a warrantless stop must be based on at least a reasonable articulable suspicion of criminal activity. *Arreola*, 176 Wn.2d at 292-93. Specifically, an investigatory stop is lawful if the officer possesses "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). We evaluate the totality of the circumstances known to the officer at the time when passing on the propriety of this warrantless stop and search. *State v. Glover*, 116 Wn.2d 509, 514, 806 P.2d 760 (1991). If a *Terry* stop is unlawful, the fruits obtained as a result must be suppressed. *See Garvin*, 166 Wn.2d at 254. The exclusionary rule mandates the suppression of evidence gathered through unconstitutional means. *Garvin*, 166 Wn.2d at 254 (quoting *State v. Duncan*, 146 Wn.2d 166, 176, 43 P.3d 513 (2002)); *see also Wong Sun v. United States*, 371 U.S. 471, 485, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963).

## B. REASONABLE SUSPICION

Soeun Sun relies on *State v. Doughty*, 170 Wn.2d 57, 239 P.3d 573 (2010), and *State v. Martinez*, 135 Wn. App. 174, 143 P.3d 855 (2006), in support of his claim that he was seized unlawfully. We find these cases and another recent case from our Supreme Court instructive.

In *Doughty*, our Supreme Court reversed Doughty's conviction when a police officer conducted a *Terry* stop on Doughty after observing him approach and return from a home about which officers had previously received complaints regarding suspected drug activity. 170 Wn.2d at 60. The *Doughty* court reasoned that there was no articulable suspicion to conduct a stop because there was no indication that Doughty interacted with anyone in the house, no informant's tip existed specifically regarding Doughty, and the officers observed no furtive movements. 170 Wn.2d at 62-64.

In *Martinez*, Division Three of this court held that police lacked the particularized suspicion necessary to conduct an investigatory stop when officers stopped Martinez after they observed him walking briskly and acting nervously in a high crime area. 135 Wn. App. at 177-78. The *Martinez* court stated that "there must be some suspicion of a particular crime or a particular person, and some connection between the two." 135 Wn. App. at 182.

Recently, in *State v. Fuentes*, 183 Wn.2d 149, ___ P.3d ___ (2015), our Supreme Court again examined the parameters of lawful *Terry* stops.[6] There, the court held that the totality of the circumstances did not justify an investigatory stop when the arresting officer felt "'the entire circumstance was suspicious.'" *Fuentes*, 183 Wn.2d at 161. The *Fuentes* court conducted its

---

[6] *Fuentes* is a consolidated case. Here, we rely on the facts from only *State v. Sandoz*, No. 90270-4 (Wash. May 7, 2015), the case with which it was consolidated.

analysis by considering each of the facts that the arresting officer relied on to justify the initial stop. 183 Wn.2d at 159. The court noted that although we evaluate the totality of the circumstances to determine whether reasonable suspicion exists, we do so in part by examining each of the facts that contributed to the alleged suspicion. *Fuentes*, 183 Wn.2d at 159.

The officer involved in that case relied on five facts to stop Steven Sandoz at an apartment building that had experienced a high number of criminal incidents: (1) Sandoz's surprise when he saw the officer, (2) conflicting stories between Sandoz and the driver of the vehicle in which Sandoz was a passenger, (3) Sandoz's pale appearance and shaking, (4) the presence of an unfamiliar vehicle, and (5) the officer's alleged authority to prevent loitering by nonoccupants. *Fuentes*, 183 Wn.2d at 159.

Considering all of these facts, the *Fuentes* court concluded that the officer who stopped Sandoz lacked reasonable suspicion that was sufficiently individualized to Sandoz to justify his stop. 183 Wn.2d at 159. Central to the court's determination was the fact that, after considering Sandoz's conduct and all the accompanying circumstances, nothing suggested that Sandoz specifically was engaged in criminal activity. *Fuentes*, 183 Wn.2d at 161. According to the court, the officer's hunch did not justify the stop. *Fuentes*, 183 Wn.2d at 161.

C. SOEUN SUN WAS STOPPED WITHOUT A REASONABLE ARTICULABLE SUSPICION

Here, Fife police suspected that the white Honda vehicle was involved in the Sportco burglary because police knew that the vehicle was in the Sportco parking lot, having been seen on the store's surveillance video driving back and forth at 3:00 AM. Second, Detective Nolta obtained credible information that Bunta was involved in the burglary and efforts to conduct surveillance on Bunta further connected the white Honda to the crime because police observed Bunta driving to and from

8

the home where the Honda was parked and, at some point, an unidentified male passenger from the Honda made contact with an unidentified passenger in Bunta's vehicle.

Third, police arrested Bunta and confirmed his involvement in the crime along with the fact that Bunta did not act alone. And fourth, 11 days after the burglary, police observed Soeun Sun approach the Honda and place a relatively small, concealed item into the trunk. Police made this observation knowing that the crime involved the theft of dozens of firearms.[7] But like *Fuentes*, the police here had no information that Soeun Sun specifically was or had been involved in any criminal activity.

The circumstances surrounding the arresting officers' suspicion of Soeun Sun consisted entirely of (1) knowledge that a particular vehicle may have been associated with a crime and (2) observing Soeun Sun placing an unidentified object into that vehicle and driving away 11 days after the crime. Moreover, during the course of both the CrR 3.5 and 3.6 hearings, Detective Nolta admitted that there was no reason to suspect Soeun Sun other than his connection and proximity to the Honda. Detective Nolta further admitted that police had seen the Honda being driven on several occasions before Soeun Sun's arrest, but he could not definitively say who was driving.

Accordingly, like *Fuentes*, the totality of the circumstances here did not give rise to a particularized suspicion that Soeun Sun was connected to the burglary. An officer's suspicion must be reasonable and a hunch, without more, does not justify a stop. *Doughty*, 170 Wn.2d at 63. Here, the officers had nothing more than a hunch that Soeun Sun may have been involved in the

---

[7] The record establishes that no facts were in dispute at the time of the suppression hearing.

burglary. This falls far short of the clear and convincing evidence the State must produce to justify the investigative stop exception to the warrant requirement.

### D. FRUIT OF THE POISONOUS TREE

If a *Terry* stop is unlawful, the fruits obtained as a result must be suppressed. *See Garvin*, 166 Wn.2d at 254. The exclusionary rule mandates the suppression of evidence gathered through unconstitutional means. *Garvin*, 166 Wn.2d at 254 (quoting *Duncan*, 146 Wn.2d at 176); *see also Wong Sun*, 371 U.S. at 485.

Because the trial court here ruled that officers seized Soeun Sun pursuant to a lawful *Terry* stop, it did not suppress evidence obtained as a result of that stop, nor did it consider whether any evidence was gathered through constitutional means.[8] We hold that Soeun Sun was unlawfully seized and that the fruits of the unlawful seizure must be suppressed. We reverse the trial court's order denying Soeun Sun's motion to suppress. Accordingly, we reverse his convictions and remand for further proceedings consistent with this opinion.

### II. SUFFICIENCY OF THE EVIDENCE

Soeun Sun next contends that the State presented insufficient evidence to establish the existence of the requisite nexus between the weapon, Soeun Sun, and the crime.[9] Accordingly, Soeun Sun argues that his convictions for first degree burglary, conspiracy to commit first degree

---

[8] The State did not argue and the trial court did not consider the effect of Soeun Sun's arrest warrant or the validity of the subsequently obtained search warrants.

[9] Although we reverse his convictions without prejudice because of the unlawful seizure as discussed above, we address Soeun Sun's insufficiency argument because, if successful, it would result in dismissal with prejudice.

burglary, and the firearm enhancements must be vacated. We hold that the State presented sufficient evidence that Soeun Sun was armed with a firearm.

"Evidence is sufficient to support a finding of guilt if, after viewing the evidence in the light most favorable to the State, a rational trier of fact could find the essential elements of the crime beyond a reasonable doubt." *State v. Rose*, 175 Wn.2d 10, 14, 282 P.3d 1087 (2012). "A claim of insufficient evidence admits the truth of the State's evidence and all inferences that reasonably can be drawn from that evidence." *State v. Caton*, 174 Wn.2d 239, 241, 273 P.3d 980 (2012). We consider circumstantial and direct evidence to be equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).

A person can be guilty of first degree burglary if the State proves, among other elements, that the defendant was armed with a deadly weapon.[10] RCW 9A.52.020(1)(a). The statutory definition for "deadly weapon" provides,

> "Deadly weapon" means any explosive or loaded or unloaded firearm, and shall include any other weapon, device, instrument, article, or substance, including a "vehicle" as defined in this section, which, under the circumstances in which it is used, attempted to be used, or threatened to be used, is readily capable of causing death or substantial bodily harm.

RCW 9A.04.110(6). This definitional statute creates two categories of deadly weapons: deadly weapons per se and deadly weapons in fact. A firearm, whether loaded or unloaded, is a deadly weapon per se. *State v. Hernandez*, 172 Wn. App. 537, 543, 290 P.3d 1052 (2012) (citing *In re*

---

[10] "A person is guilty of criminal conspiracy when, with intent that conduct constituting a crime be performed, he or she agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them takes a substantial step in pursuance of such agreement." RCW 9A.28.040. But we decline to address the conspiracy charge specifically because Soeun Sun provides no meaningful argument related to that charge. For purposes of his sufficiency challenge, Soeun Sun relies entirely on the nexus argument that we address in this section.

No. 45058-5-II

*Pers. Restraint of Martinez*, 171 Wn.2d 354, 365, 256 P.3d 277 (2011)), *review denied*, 177 Wn.2d 1022 (2013).

For purposes of first degree burglary, defendants are armed with a deadly weapon if a firearm is easily accessible and readily available for use by the defendants for either offensive or defensive purposes. *State v. Brown*, 162 Wn.2d 422, 431, 173 P.3d 245 (2007). When a defendant has actual possession of a firearm, sufficient evidence supports a first degree burglary conviction despite the firearm being unloaded and no evidence showing that the defendant intended to use it. *Hernandez*, 172 Wn. App. at 543-44.

Soeun Sun relies entirely on *Brown* in support of his argument that the State was required to prove that a nexus existed. In *Brown*, two men burglarized a residence but did not have the opportunity to actually remove any property because the occupant returned home during the crime. 162 Wn.2d at 425-26. Brown and the other man had, however, moved the homeowner's rifle from a closet onto a bed. *Brown*, 162 Wn.2d at 426. Our Supreme Court vacated the first degree burglary conviction and firearm enhancement, holding that application of a firearm sentence enhancement required a nexus among the defendant, the weapon, and the crime. *Brown*, 162 Wn.2d at 435.

But *Brown* involved the question of constructive possession and the vast majority of its analysis, including its holding regarding the required nexus, related to being "armed" for purposes of the firearm sentencing enhancement. *See* 162 Wn.2d at 434 n.4 (stating that the dissent ignores the fact that the vast majority of courts conclude that a defendant is armed when he enters a building and acquires a firearm as "loot").

12

This court's decision in *Hernandez* offers a more apt comparison to the facts here. There, a group of burglars committed a series of burglaries, during one of which they took a 20 gauge shotgun. *Hernandez*, 172 Wn. App. at 540. The *Hernandez* court was not persuaded by the argument that the State must prove a nexus between the firearm and the crime because there is no nexus requirement, either for the purpose of first degree burglary or for a firearm enhancement where there is actual possession of a firearm, rather than constructive possession. 172 Wn. App. at 544.

Here there is no dispute that firearms were taken in the course of the burglary and therefore either Soeun Sun or his accomplices were in actual possession of the firearms during the commission of the burglary. Soeun Sun states in his own brief that "[t]here was evidence here that the Sportco store was broken into at night and firearms were stolen." Br. of Appellant at 24; *see also* Ex. 31 (video surveillance evidence clearly showing two men running from the Sportco carrying firearms). This fact is sufficient evidence to support the first degree burglary conviction and the firearm enhancement for the burglary.

Aside from his nexus argument, Soeun Sun asserts only that no evidence suggested that anyone involved in the burglary intended or was willing to *use* the stolen firearms in furtherance of the crime. But "[w]hen first degree burglary involves deadly weapons per se, specifically firearms taken in the course of a burglary, 'no analysis of willingness or present ability to use a firearm as a deadly weapon'" is necessary. *Hernandez*, 172 Wn. App. at 543 (internal quotation marks omitted) (quoting *Martinez*, 171 Wn.2d at 367).

13

Accordingly, we hold that the State presented sufficient evidence that Soeun Sun or an accomplice was armed with a deadly weapon for purposes of first degree burglary and the accompanying firearm enhancements.

### III. FAILURE TO INSTRUCT REGARDING "NEXUS" REQUIREMENT

We address Sun's "nexus" instructional error argument due to the possibility that this issue may recur in case of retrial. Soeun Sun argues that even if sufficient evidence did exist to present the burglary and conspiracy charges to the jury, reversal is nevertheless required because the court failed to instruct the jury as to the nexus requirement for purposes of the first degree burglary charge. We hold that for the burglary charge, no instruction regarding nexus is required because Soeun Sun or an accomplice had actual, rather than constructive, possession of the guns.

Alleged errors of law in jury instructions are reviewed de novo. *State v. Willis*, 153 Wn.2d 366, 370, 103 P.3d 1213 (2005). Jury instructions are proper when they permit the parties to argue their theories of the case, do not mislead the jury, and properly inform the jury of the applicable law. *Willis*, 153 Wn.2d at 370.

The trial court's instruction provided,

"Armed with a firearm", for the charge of Burglary in the First Degree only means that the defendant or an accomplice had a firearm in his possession or control and that the firearm, whether loaded or not, was readily available for offensive or defensive use."

Clerk's Papers at 230. Soeun Sun requested that the instruction also include a "nexus" definition similar to that contained in the firearm enhancement instruction.

The trial court refused to alter its proposed instruction to include any mention of a nexus requirement because, in its view, the instructions as written allowed both sides to argue their respective theories of the case and were consistent with current case law. As explained previously,

the trial court ruled correctly because there is no additional nexus requirement when the evidence suggests that defendants in first degree burglary cases have actual possession of firearms. *Hernandez*, 172 Wn. App. at 544.

Soeun Sun again argues that the instruction was inadequate because evidence of intent or willingness to use the firearm is required to prove that a defendant is armed. But again, as explained above, Soeun Sun is incorrect because "'no analysis of willingness or present ability to use a firearm as a deadly weapon'" is necessary when a first degree burglary involves a deadly weapon per se, specifically firearms taken in the course of that burglary. *Hernandez*, 172 Wn. App. at 543 (quoting *Martinez*, 171 Wn.2d at 367). We hold that Soeun Sun's claim fails.

## IX. STATEMENT OF ADDITIONAL GROUNDS (SAG)

In his SAG, Soeun Sun appears to argue that the trial court violated his right to a speedy trial, he received ineffective assistance of counsel, and testimony from witnesses against him should not have been used as evidence. We disagree that the trial court violated his right to speedy trial and decline to reach his other additional grounds.

Under CrR 3.3(b)(1)(i), an individual held in custody pending trial must be tried within 60 days of arraignment. But certain time periods are excluded from the computation of time, including continuances granted by the trial court. CrR 3.3(e). With regard to continuances, CrR 3.3(f)(2) explains,

> On motion of the court or a party, the court may continue the trial date to a specified date when such continuance is required in the administration of justice and the defendant will not be prejudiced in the presentation of his or her defense. . . . The court must state on the record or in writing the reasons for the continuance. The bringing of such motion by or on behalf of any party waives that party's objection to the requested delay.

15

Here, Soeun Sun's trial did not begin for well over a year after his arrest. But all of the orders granting continuances in the record on appeal were made either by Soeun Sun's trial counsel on his behalf or by one of Soeun Sun's codefendants with the agreement of his trial counsel. We hold that no time for trial violation occurred for that reason.

Regarding his claim of ineffective assistance of counsel, Soeun Sun states that, in his view, his attorney did not provide effective representation because Soeun Sun's attorney did not "[put] forth what [Soeun Sun] consider[ed sufficient] effort." SAG at 1. And concerning his challenge to the use of the testimony of witnesses against him, Soeun Sun claims that "many if not all witness[es] against [him] have a record of dishonesty." SAG at 1. We need not address these issues because we reverse on other grounds.

We vacate the trial court's order denying Soeun Sun's motion to suppress, reverse his convictions, and remand for proceedings consistent with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, C.J.

We concur:

WORSWICK, J.

MELNICK, J.

16