[Nos. 41707-3-II; 41717-1-II;    Division Two.    December 26, 2012.]
41908-4-II; 43146-7-II.

THE STATE OF WASHINGTON, *Respondent*, v. NELSON HERNANDEZ, *Appellant*.

THE STATE OF WASHINGTON, *Respondent*, v. ENRIQUE RIVERA, *Appellant*.

THE STATE OF WASHINGTON, *Respondent*, v. JASON DELACRUZ, *Appellant*.

*In the Matter of the Personal Restraint of* JASON DELACRUZ, *Petitioner*.

538

*Jason A. Delacruz*, pro se.

*Kathryn A. Russell Selk* (of *Russell Selk Law Office*); *Stephanie C. Cunningham*; and *Jennifer J. Sweigert* (of *Nielsen, Broman & Koch PLLC*), for appellants.

*Mark E. Lindquist, Prosecuting Attorney*, and *Thomas C. Roberts, Deputy*, for respondent.

¶1 BRIDGEWATER, J.[*] — Nelson Hernandez, Enrique Rivera, and Jason Delacruz appeal from their convictions and sentences. We have consolidated Delacruz's personal restraint petition (PRP) with this appeal. We hold that (1) sufficient evidence supports the first degree burglary conviction; (2) convictions for both first degree burglary and residential burglary do not violate double jeopardy protections when they concern burglaries of different homes; (3) the defendants' convictions for firearm theft merge with their convictions for firearm possession, thus, we accept the State's concession, vacate those convictions, and remand for resentencing; and (4) trial counsel did not render ineffective assistance based on offender score calculation. Finally, we deny Delacruz's statement of additional grounds and his PRP, holding that a witness's identification of Delacruz's photograph as being taken from the jail's booking area did not rise to the level of a mistrial, and holding that neither the testimony using the term "victim" nor the prosecutor's closing comments were errors of constitutional magnitude that caused actual and substantial prejudice.

---

[*] Judge C.C. Bridgewater is serving as a judge pro tempore of the Court of Appeals, Division Two, pursuant to CAR 21(c).

# FACTS

## I. THREE BURGLARIES

¶2 Over a two-day period, a group of five to six persons burglarized three different homes. The first burglary occurred at Sara Spencer's house, where a group of burglars kicked in her front door while she was at work and her son was at school. The burglars took various items of property, including a laptop computer, a digital camera, electronic game systems, and games.

¶3 The second burglary occurred at Iolani Menza's house, where a group of burglars kicked in his door while he and his son were at a restaurant eating breakfast. The burglars took various items of property, including a desktop computer, cameras, electronic game systems, and games, a ukulele, a Coach purse, a cell phone, and an iPod. Additionally, the burglars took a 20-gauge shotgun in a zippered, soft gun case from underneath Menza's bed. At the time of the burglary, the gun was loaded with blanks, birdshot, and slugs. Menza kept the fully functional shotgun for home protection.

¶4 The third burglary occurred at Joseph Kraut's house, where a group of burglars kicked in the garage door while Kraut and his wife were away on vacation. The burglars took an autographed Green Bay Packers jacket and baseball cards. Additionally, the burglars took a safe about the size of a dorm room refrigerator. Kraut kept the safe hidden, such that only someone looking for it would find it; and he secured the safe with both key and combination locks.

¶5 Kraut, who is a Washington State Patrol trooper, kept his wife's fine jewelry, his duty stun gun, and several firearms in the safe. The firearms included (1) a .40 caliber duty revolver; (2) a .357 caliber "back-up weapon" revolver; (3) a 9 mm Beretta, which was his first duty weapon; (4) a

.357 Ruger, which he used for target practice; (4) a .22 Ruger pistol, which he also used for target practice; and (5) a .25 caliber pistol. Report of Proceedings at 263. The firearms were all operational but unloaded. Kraut stored the magazines for the .22 Ruger pistol and the .25 caliber pistol in the same safe, but he stored the rest of the magazines in a separate location, which the burglars did not disturb.

## II. PROCEDURE

¶6 Police charged Hernandez, Rivera, and Delacruz each with two counts of first degree burglary; three counts of residential burglary; three counts of first degree theft; two counts of firearm theft; one count of possession of a stolen firearm; one count of possession of stolen property; and one count of first degree trafficking in stolen property. Additionally, the State charged Hernandez and Delacruz with two counts of unlawful possession of a firearm. For all the defendants, the State alleged firearm enhancements on several of the charges.

¶7 The jury convicted Hernandez of one count of first degree burglary, three counts of residential burglary, two counts of first degree theft, two counts of firearm theft, one count of possession of stolen firearm, one count of possession of stolen property, one count of first degree trafficking in stolen property, and one count of second degree unlawful possession of a firearm.

¶8 The jury convicted Rivera of one count of first degree burglary, three counts of residential burglary, two counts of first degree theft, two counts of firearm theft, one count of second degree theft, one count of possession of a stolen firearm, one count of first degree possession of stolen property, and one count of first degree trafficking in stolen property.

¶9 The jury convicted Delacruz on one count of first degree burglary, three counts of residential burglary, two

counts of first degree theft, two counts of firearm theft, one count of second degree theft, one count of possession of stolen firearm, one count of first degree possession of stolen property, one count first degree trafficking in stolen property, and one count of first degree unlawful possession of a firearm.

¶10 At sentencing, the court merged one count of residential burglary with the sentence for first degree burglary (count II and count I). The court also merged the count of possession of stolen property with the sentence for first degree theft (count XV and XIV). Based on the State's argument that multiple firearms were involved, the court did not merge the count of possession of a stolen firearm with the sentence for theft of a firearm; the parties did not object. Hernandez, Rivera, and Delacruz appeal.

## ANALYSIS

### SUFFICIENT EVIDENCE

¶11 Hernandez, Rivera, and Delacruz argue that insufficient evidence supported their first degree burglary convictions because they did not commit the burglaries while armed and the firearms were merely "loot" acquired during the burglary. Br. of Appellant Delacruz at 10; Br. of Appellant Hernandez at 2; Br. of Appellant Rivera at 2. We hold that there is sufficient evidence to support first degree burglary because one of the defendants carried the stolen gun to the waiting vehicle; thus they committed the burglaries while armed.

¶12 When reviewing a challenge to the sufficiency of the evidence, we consider the evidence in the light most favorable to the State and determine whether any rational trier of fact could have found the crime's essential elements beyond a reasonable doubt. *State v. Williams*, 137 Wn. App. 736, 743, 154 P.3d 322 (2007). We draw all reasonable inferences from the evidence in the State's favor and

interpret the evidence " 'most strongly against the defendant.' " *State v. Joy*, 121 Wn.2d 333, 339, 851 P.2d 654 (1993) (quoting *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)). We consider both circumstantial and direct evidence as equally reliable and defer to the trier of fact on issues of conflicting testimony, witness credibility, and the persuasiveness of the evidence. *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004). First degree burglary requires the State to prove, among other elements, that the defendants were armed with a deadly weapon or assaulted another person. RCW 9A.52.020. The statutory definition for "deadly weapon" provides:

> "Deadly weapon" means any explosive or loaded or unloaded firearm, and shall include any other weapon, device, instrument, article, or substance, including a "vehicle" as defined in this section, which, under the circumstances in which it is used, attempted to be used, or threatened to be used, is readily capable of causing death or substantial bodily harm.

RCW 9A.04.110(6). This definitional statute creates two categories of deadly weapons: deadly weapons per se and deadly weapons in fact. A firearm, whether loaded or unloaded, is a deadly weapon per se. *In re Pers. Restraint of Martinez*, 171 Wn.2d 354, 365, 256 P.3d 277 (2011).

¶13 When first degree burglary involves deadly weapons per se, specifically firearms taken in the course of a burglary, " 'no analysis of willingness or present ability to use a firearm as a deadly weapon' " is necessary. *Martinez*, 171 Wn.2d at 367 (quoting *State v. Hall*, 46 Wn. App. 689, 695, 732 P.2d 524 (1987)). For purposes of first degree burglary, defendants are armed with a deadly weapon if a firearm is easily accessible and readily available for use by the defendants for either offensive or defensive purposes. *State v. Brown*, 162 Wn.2d 422, 431, 173 P.3d 245 (2007). When the defendant had actual possession of a firearm, sufficient evidence supports a first degree burglary conviction despite the firearm being unloaded and no evidence

showing that defendant intended to use it. *State v. Faille*, 53 Wn. App. 111, 114-15, 766 P.2d 478 (1988).

¶14 Here, Hernandez, Rivera, and Delacruz had actual possession of Menza's loaded, fully functional, 20-gauge shotgun when one of them carried the shotgun out of Menza's house and placed it into the back of their vehicle. Where defendant was in actual possession of the firearm, sufficient evidence supports a first degree burglary conviction despite no evidence showing that defendant intended to use it. *Hall*, 46 Wn. App. at 695. This case involves a deadly weapon per se, a firearm, and a first degree burglary conviction, without firearm enhancements.

¶15 Hernandez, Rivera, and Delacruz rely on *Brown*, 162 Wn.2d 422, to argue that the State failed to show a nexus between the firearm and the crime. We have previously held that the "nexus" requirement is not applicable to firearm enhancements when there is actual, not constructive, possession of a firearm. *State v. Easterlin*, 126 Wn. App. 170, 173, 107 P.3d 773 (2005), *aff'd on other grounds*, 159 Wn.2d 203, 149 P.3d 366 (2006) (our Supreme Court has affirmed this concept); *see Easterlin*, 159 Wn.2d at 209 (concluding that in actual possession cases, it will rarely be necessary to go beyond the commonly used "readily accessible and easily available" instruction). So even if we were considering a firearm enhancement, a "nexus" finding is not required because the possession was actual, not constructive.

¶16 *Brown* does not benefit the defendants here. Hernandez, Rivera, and Delacruz overlook that the *Brown* analysis encompasses both first degree burglary and firearm sentence enhancements and that *Brown*'s nexus requirements pertained to firearm sentence enhancements. *Brown*, 162 Wn.2d at 434 n.4 (arguing that the dissent relies on cases that do not involve both a deadly weapon sentence enhancement and first degree burglary).

¶17 In *Brown*, Brown and another man burglarized a house but did not remove anything. When the occupant of the house returned home, he observed his unloaded AK-47

rifle, normally kept in the closet, on his bed, along with an ammunition clip from a different rifle. Based on the rifle's location, the trial court convicted Brown of first degree burglary and applied a firearm sentence enhancement. *Brown*, 162 Wn.2d at 427. Our Supreme Court vacated the first degree burglary conviction and firearm enhancement, holding that application of a firearm sentence enhancement required a nexus among the defendant, the weapon, and the crime, and that did not exist. *Brown*, 162 Wn.2d at 432, 435. The *Brown* court distinguished the long line of case law holding that a defendant is armed if he or she enters a building unarmed and then acquires a firearm as "loot." *Brown*, 162 Wn.2d at 434 n.4 (citing *Faille*, 53 Wn. App. at 114-15; *Hall*, 46 Wn. App. at 695). The *Brown* court stated that those cases were not determinative because in those cases, weapons were removed from the homes and those cases did not involve firearm enhancements but dealt solely with first degree burglary. *Brown*, 162 Wn.2d at 434 n.4. Thus, a nexus requirement is inapplicable when the charge is first degree burglary and a firearm is stolen.

¶18 Taken in the light most favorable to the State, we hold that sufficient evidence supports Hernandez's, Rivera's, and Delacruz's first degree burglary convictions.

¶19 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

HUNT and VAN DEREN, JJ., concur.

Review denied at 177 Wn.2d 1022 (2013).