

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Personal
Restraint of:

ALEXIS J. SCHLOTTMANN,

Petitioner.

)
)
)
)
)
)
)
)
)
)
)

DIVISION ONE

No. 75243-0-I

UNPUBLISHED OPINION

FILED: August 1, 2016

DWYER, J. — Alexis Schlottmann filed this personal restraint petition challenging her restraint pursuant to her 2012 convictions arising from the burglary of three separate residences. Schlottmann contends (1) that there is insufficient evidence to support many of the jury's verdicts, (2) that the trial court erred by not merging her conviction on count 7 (theft in the second degree involving the Winkelman residence) with her conviction on count 13 (possession of stolen property from the Winkelman residence), and (3) that her trial counsel provided constitutionally ineffective assistance by choosing not to argue that various crimes constituted the same criminal conduct.

To obtain relief on these claims, Schlottmann must demonstrate either (1) actual and substantial prejudice arising from constitutional error, or (2) nonconstitutional error that inherently results in a "complete miscarriage of justice." In re Pers. Restraint of Cook, 114 Wn.2d 802, 813, 792 P.2d 506 (1990). Schlottmann's argument regarding the theft and possession of stolen property convictions is meritorious; she is entitled to collateral relief. However,

No. 75243-0-I/2

she has not established an entitlement to relief on her other claims.

I

The pertinent facts were set forth in our prior opinion, State v. Schlottmann, noted at 181 Wn. App. 1034 (2014), and will be referenced herein only as necessary.

II

As a preliminary matter, we must address the State's contention that Schlottmann's petition is untimely. This is so, the State asserts, because Schlottmann was required to file her petition in Division II rather than in Division I of this court. The State is wrong.

The relevant statute provides:

(1) *No petition* or motion for collateral attack on a judgment and sentence in a criminal case *may be filed more than one year after the judgment becomes final* if the judgment and sentence is valid on its face and was rendered by a court of competent jurisdiction.
    (2) For the purposes of this section, "collateral attack" means any form of postconviction relief other than a direct appeal. "Collateral attack" includes, but is not limited to, a personal restraint petition, a habeas corpus petition, a motion to vacate judgment, a motion to withdraw guilty plea, a motion for a new trial, and a motion to arrest judgment.
    (3) For the purposes of this section, a judgment becomes final on the last of the following dates:
        (a) The date it is filed with the clerk of the trial court;
        (b) *The date that an appellate court issues its mandate disposing of a timely direct appeal from the conviction*; or
        (c) The date that the United States Supreme Court denies a timely petition for certiorari to review a decision affirming the conviction on direct appeal. The filing of a motion to reconsider denial of certiorari does not prevent a judgment from becoming final.

RCW 10.73.090 (emphasis added).

- 2 -

RAP 18.23 provides, in pertinent part, that "[a] pleading will be considered timely filed by the Supreme Court and the Court of Appeals if it is timely filed in *any Division* of the Court of Appeals or in the Supreme Court." (Emphasis added.)

Schlottmann's mandate in this case was filed on August 13, 2014, rendering the judgment final. She filed her personal restraint petition in Division I on August 13, 2015. The petition was filed within the one-year time limit prescribed by the applicable statute. Moreover, the petition was properly filed pursuant to the applicable court rule. Thus, it is timely.

III

Having established that Schlottmann's petition was timely filed, we now turn to the merits of her petition. Schlottmann first contends that insufficient evidence supports many of the jury's verdicts. None of these contentions have merit.

A

The due process clauses of the federal and state constitutions require that the State prove every element of a crime beyond a reasonable doubt. Apprendi v. New Jersey, 530 U.S. 466, 476-77, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000); U.S. CONST. amend. XIV; WASH. CONST. art. I, § 3. "[T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be . . . to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307,

318, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319.

"A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "In determining the sufficiency of the evidence, circumstantial evidence is not to be considered any less reliable than direct evidence." State v. Delmarter, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). "Deference must be given to the trier of fact who resolves conflicting testimony and evaluates the credibility of witnesses and persuasiveness of material evidence." State v. Carver, 113 Wn.2d 591, 604, 781 P.2d 1308, 789 P.2d 306 (1989).

B

Schlottmann first contends that insufficient evidence supports the jury's verdict on count 1, first degree burglary of the Finely residence while armed with a firearm.[1] This is so, she asserts, because no reasonable jury could find that either Schlottmann or Lockard were armed with a deadly firearm at the time that the burglary was committed. Specifically, she asserts that "the evidence establishes only that the firearms were the object of the crime and merely 'loot.'" Petition at 25. We disagree.

---

[1] RCW 9A.52.020(1); RCW 13.40.196.

In State v. Hernandez, 172 Wn. App. 537, 290 P.3d 1052 (2012), Division II of this court rejected a similar argument. Therein, the appellants challenged the sufficiency of the evidence supporting their first degree burglary convictions arguing that "they did not commit the burglaries while armed and the firearms were merely 'loot' acquired during the burglary." Hernandez, 172 Wn. App. at 542. The court held "that there is sufficient evidence to support first degree burglary because one of the defendants carried the stolen gun to the waiting vehicle; thus they committed the burglaries while armed." Hernandez, 172 Wn. App. at 542.

Herein, a witness saw Schlottmann and Lockard enter the Finely residence and a firearm belonging to Finely was later found in a van. Lockard was identified as the driver and Schlottmann as a passenger in this van immediately following the burglary. Given these facts, sufficient evidence supports the jury's verdict of guilt on count 1. Hernandez, 172 Wn. App. at 543-45; State v. Hall, 46 Wn. App. 689, 695, 732 P.2d 524 (1987).

C

Schlottmann next contends that insufficient evidence supports the jury's verdict on count 2, theft of a firearm.[2] This is so, she asserts, because no evidence was presented showing that Schlottmann ever handled the firearm or that Schlottmann even knew that it was taken from the Finely residence. Such evidence was not required to support her conviction.

_____

[2] RCW 9A.56.300.

"A person is guilty of theft of a firearm if he or she commits a theft of any firearm." RCW 9A.56.300(1).

A person can be found guilty if that person is an accomplice of another person in the commission of the crime. See RCW 9A.08.020(2)(c). An accomplice is a person who, "[w]ith knowledge that it will promote or facilitate the commission of the crime," RCW 9A.08.020(3)(a), either "[s]olicits, commands, encourages, or requests such other person to commit it" or "[a]ids or agrees to aid such other person in planning or committing it." RCW 9A.08.020(3)(a)(i), (ii). When doing so, "an accomplice need not have knowledge of each element of the principal's crime in order to be convicted under RCW 9A.08.020. General knowledge of 'the crime' is sufficient." State v. Roberts, 142 Wn.2d 471, 513, 14 P.3d 713 (2000); accord State v. Rice, 102 Wn.2d 120, 125-26, 683 P.2d 199 (1984); State v. Davis, 101 Wn.2d 654, 655, 682 P.2d 883 (1984).

The evidence admitted at trial established that a witness saw Schlottmann enter the Finely residence with Lockard and leave 10 minutes later, purportedly taking with them items from inside. A firearm belonging to Finely was later recovered from the van driven by Lockard. Schlottmann was a passenger in this van immediately after the burglary was committed. Given these facts, a reasonable jury could find that either Schlottmann or Lockard took the firearm from the residence and put it in the van. Viewed in the light most favorable to the State, this evidence is sufficient to support the jury's verdict of guilt on count 2.

D

Schlottmann next contends that insufficient evidence supports the jury's verdicts on count 6, residential burglary of the Winkelman residence, and count 9, residential burglary of the Japhet residence.[3] This is so, she asserts, because no evidence was presented to show that she acted as either a principal or an accomplice in the commission of these crimes. Specifically, she avers that "[t]he only evidence that connects Ms. Schlottmann to the Japhet or Winkleman [sic] burglaries was the stolen item police located in Ms. Lockard's van after Ms. Schlottmann and Lockard were arrested." Petition at 28. The record indicates otherwise.

"A person is guilty of residential burglary if, with intent to commit a crime against a person or property therein, the person enters or remains unlawfully in a dwelling other than a vehicle." RCW 9A.52.025(1).

The evidence admitted at trial established that a witness saw Schlottmann and Lockard enter the Finely residence and emerge 10 minutes later, purportedly carrying property from therein. In addition, the jury heard evidence regarding the significant similarities between the Finely, Japhet, and Winkelman burglaries. All of the homes were entered into by force, purportedly with a crowbar-type instrument. A metal crowbar and property stolen from each of the three residences was found in the van used by Schlottmann and Lockard to drive to and flee from the Finely burglary. All three residences were located in northwest Olympia. The burglaries were all reported to the police within a two-day period,

---

[3] RCW 9A.52.025.

the Japhet residence on November 17, 2011, and the Winkelman and Finely residences on November 18, 2011. Given these facts, a reasonable jury could find that Schlottmann had knowledge that she and Lockard were entering the Finely residence with the intent to deprive Finely of property found therein. Similarly, a reasonable jury could infer (given the similarities between the burglaries) that Schlottmann and Lockard were accomplices in the commission of a string of burglaries involving the Finely, Japhet, and Winkelman residences. Viewed in the light most favorable to the State, this evidence is sufficient to support the jury's verdict of guilt on both count 6 and count 9.

E

Schlottmann next contends that insufficient evidence supports the jury's verdicts on count 8, malicious mischief in the second degree involving the Winkelman residence, and count 10, malicious mischief in the second degree involving the Japhet residence.[4] This is so, she asserts, because no reasonable jury could find that she, knowingly and maliciously, as either a principal or an accomplice, caused physical damage to these residences. We disagree.

> A person is guilty of malicious mischief in the second degree if he or she knowingly and maliciously:
> (a) Causes physical damage to the property of another in an amount exceeding seven hundred fifty dollars.[5]

RCW 9A.48.080(1)(a).

---

[4] RCW 9A.48.080.
[5] In her petition, Schlottmann does not dispute that the property damage to both the Japhet and Winkelman residences exceeded $750.

Again, the evidence admitted at trial established that a witness saw Lockard retrieve a crowbar-type instrument from the van before entering the Finely residence with Schlottmann. A metal crowbar was later found in the van occupied by the two women. The Finely, Japhet, and Winkelman residences all were damaged in a manner consistent with a person having pried open a door in order to gain entry. Given these facts, a reasonable jury could find that Lockard and Schlottmann were accomplices in knowingly and maliciously causing damage to the Winkelman and Japhet residences by entering these residences in the same way that they had entered the Finely residence—with a crowbar-type instrument. Viewed in the light most favorable to the State, this evidence is sufficient to support the jury's verdict of guilt on both count 8 and count 10.

F

Schlottmann next contends that insufficient evidence supports the jury's verdicts on count 7, theft in the second degree involving the Winkelman residence, and count 11, theft in the second degree involving the Japhet residence.[6] She asserts different arguments with regard to each conviction. Neither is availing.

> (1) A person is guilty of theft in the second degree if he or she commits theft of:
>     (a) Property or services which exceed(s) seven hundred fifty dollars in value but does not exceed five thousand dollars in value, other than a firearm as defined in RCW 9.41.010 or a motor vehicle;
>
>     . . .

---

[6] RCW 9A.56.040.

(d) An access device.[7]

RCW 9A.56.040.

As to count 7, she avers that insufficient evidence supports her conviction because no reasonable jury could find that Schlottmann, as either a principal or as an accomplice, intended to deprive Winkelman of an access device, specifically, his credit card. This is so, she claims, because no witness saw her at the Winkelman residence and the credit card was not found in her vehicle, in her bag, or in her actual or constructive possession while she was seated in the passenger seat. However, as set forth above, the evidence admitted at trial allowed a reasonable jury to infer that Schlottmann and Lockard were accomplices in committing a string of burglaries over a two-day period. From this evidence, a reasonable jury could find that, at the time that the Winkelman burglary was committed, either Lockard or Schlottmann stole Winkelman's credit card and placed it in the van. Viewed in the light most favorable to the State, this evidence is sufficient to support the jury's verdict of guilt on count 7.

As to count 11, Schlottmann avers that insufficient evidence supports her conviction because no reasonable jury could have found that Schlottmann or Lockard obtained or exerted unauthorized control over any property belonging to the Japhets that exceeded $750 in value. This is so, she claims, because the

---

[7] "Access device" means any card, plate, code, account number, or other means of account access that can be used alone or in conjunction with another access device to obtain money, goods, services, or anything else of value, or that can be used to initiate a transfer of funds, other than a transfer originated solely by paper instrument;
RCW 9A.56.010(1).

only property found in the van that belonged to the Japhets was a checkbook.

However, evidence admitted at trial established that approximately $3,236 worth of property was taken from the Japhet residence. Given that a checkbook belonging to the Japhets was found in the van, a reasonable jury could infer that Schlottmann and Lockard also stole the Japhets' property valued at approximately $3,236. Viewed in the light most favorable to the State, this evidence is sufficient to support the jury's verdict of guilt on count 11.

G

Schlottmann next contends that insufficient evidence supports her conviction on count 13, possession of stolen property in the second degree involving the Winkelman residence.[8] This is so, she asserts, both because the trial court did not instruct the jury on the concept of constructive possession and because no evidence was presented to show that she actually possessed any of the items that were stolen from the Winkelman residence.

Schlottmann's evidentiary insufficiency challenge fails for two reasons. First, the sufficiency of the evidence on any particular count does not rest on the manner in which the jury was instructed. Musacchio v. United States, 577 U.S. ___, 136 S. Ct. 709, 715, 193 L. Ed. 2d 639 (2016). Instead, "the sufficiency of the evidence should be assessed against the elements of the charged crime." Musacchio, 136 S. Ct. at 713.

Second, there is sufficient evidence from which a reasonable jury could find that the crime was committed as charged.

---

[8] RCW 9A.56.160.

(1) A person is guilty of possessing stolen property in the second degree if:

. . .

(c) He or she possesses a stolen access device.[9]

RCW 9A.56.160(1)(c).

"'Possessing stolen property' means knowingly to receive, retain, possess, conceal, or dispose of stolen property knowing that it has been stolen and to withhold or appropriate the same to the use of any person other than the true owner or person entitled thereto." RCW 9A.56.140(1).

Again, the evidence admitted at trial was such that a reasonable jury could infer that Schlottmann and Lockard were accomplices in the commission of a string of burglaries that occurred over a two-day period. Many of the stolen items were recovered from a van in which Schlottmann was witnessed to be a passenger. Given these facts, a reasonable jury could infer that either Lockard or Schlottmann, as accomplices in the commission of these crimes, knowingly "receive[d], retain[ed], [and] possess[ed]" Winkelman's missing credit card during the course of committing the burglary. RCW 9A.56.140(1). Viewed in the light most favorable to the State, this evidence supports the jury's verdict of guilt on count 13.

## IV

Schlottmann next contends that the trial court erred by entering judgment on both her conviction on count 7, theft in the second degree involving the Winkelman residence, and her conviction on count 13, possession of stolen

---

[9] For the definition of "access device," see footnote 7, supra.

property involving the Winkelman residence. This is so, she asserts, because the counts arise out of the same criminal act and because both counts require the act of possession. We agree.

Judgment cannot be entered upon a conviction for possession of stolen property that arises out of the same act as underlies a separate conviction for theft of that property. This is so because "one cannot be both the principal thief and the receiver of stolen goods." State v. Hancock, 44 Wn. App. 297, 301, 721 P.2d 1006 (1986); accord State v. Melick, 131 Wn. App. 835, 840-41, 129 P.3d 816 (2006). "'And this is so for the commonsensical, if not obvious, reason that a man who takes property does not at the same time give himself the property he has taken.'" Hancock, 44 Wn. App. at 301 (internal quotation marks omitted) (quoting State v. Flint, 4 Wn. App. 545, 547, 483 P.2d 170 (1971)). The trial court erred by entering judgment upon the guilty verdicts on both count 7 and count 13. The State concedes this error in its response to Schlottmann's petition. Judgment should have been entered upon only the most serious count. Thus, judgment should not have been entered on the possession of stolen property offense.

This trial court error resulted in a "complete miscarriage of justice" as to the possession of stolen property charge. Cook, 114 Wn.2d at 813. In addition, not entering judgment on the possession of stolen property conviction will change Schlottmann's offender score on her other offenses. Because an offender score is a "fact" at sentencing, this means that she must be resentenced with the proper facts (including her offender score) applied to her various sentences.

V

Schlottmann lastly contends that her counsel provided her with constitutionally ineffective assistance at sentencing. The reason for this, she asserts, is that her counsel did not argue that various of her convictions were based on the same criminal conduct as others of her convictions.

We need not address this issue. On remand, at the new sentencing hearing, the facts will not be the same as they were at the original hearing. At a minimum, a different fact will be the absence of the vacated possession of stolen property conviction.

In light of the different factual posture, defense counsel will be free—in the exercise of counsel's professional judgment—to urge a same criminal conduct analysis (or not to do so) upon the sentencing court. We will not issue an advisory opinion on the merits of such an argument.

VI

The petition is granted, in part.

The cause is remanded for resentencing in accordance with this opinion.

_Dwyer, J._

We concur:

_Trickey, ACJ_

_Becker, J._