# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 57850-6-II |
| Respondent, | |
| v. | |
| JOEL DONALD ARTHUR ANDERSON, | UNPUBLISHED OPINION |
| Appellant. | |

CRUSER, C.J. — Joel Anderson was convicted of second degree burglary and second degree theft after a jury trial. An essential element of second degree theft is that the value of the stolen goods, in this case 72 collectible Hot Wheels cars, was between $750 and $5,000. The State offered testimony from the owner of the cars estimating their value at $4,000-$5,000 and explaining that they were rare cars from the 1960s and 70s that took over a decade to accumulate. The owner also created a spreadsheet showing the prices of some, but not all, of the stolen cars derived from eBay listings. The spreadsheet was admitted at trial.

Anderson now appeals his second degree theft conviction[1], arguing that the spreadsheet was inadmissible hearsay and that his attorney was therefore ineffective in failing to object on that ground. He asks us to reverse his conviction and grant him a new trial. Anderson also appeals from his 38-month sentence, arguing that his offender score was miscalculated because his prior convictions should have washed out. He argues in the alternative that he is entitled to resentencing

---

[1] Anderson does not appeal his second degree burglary conviction.

due to his attorney's ineffective assistance in stipulating to the inclusion of the allegedly washed out convictions. Finally, Anderson asks us to remand for the trial court to strike his crime victim penalty assessment (VPA) and DNA collection fee from his sentence due to his indigency. The State concedes that Anderson is entitled to this relief as a result of recent statutory changes.

Because the State presented ample admissible evidence of the value of the stolen cars, Anderson does not show that excluding the spreadsheet would have been reasonably likely to change the outcome of his trial and his ineffective assistance of counsel claim fails. We also reject Anderson's challenge to his offender score because he stipulated to the inclusion of the offenses he now says should have washed out, and because he fails to show prejudice from his attorney's stipulation. However, we accept the State's concession that Anderson is entitled to have the VPA and the DNA collection fee stricken from his judgment and sentence.

Accordingly, we affirm Anderson's conviction and sentence, but remand to the trial court to strike the VPA and DNA collection fee.

## FACTS

### I. BACKGROUND

Jacqueline Dyer's late husband, Darren, spent over a decade collecting antique Hot Wheels cars. The Dyers displayed 144 of these cars in a display case in the lobby of their business. The collection included "every single car" in the Hot Wheels redline collection, a series produced in the 1960s and 70s. Verbatim Rep. of Proc. (VRP) at 113-14. Redline cars are more valuable than

2

non-redline cars and are "priceless" to collectors. *Id.* at 244. In part, this is because each redline car came with a unique button.[2]

On December 1, 2020, Dyer arrived at work and saw that 72 of the cars were gone. She could not immediately identify all of the stolen cars, but later identified 48 redline cars based on the corresponding buttons that were left behind when the cars were stolen. She looked up eBay listings of the 48 redline cars she identified and estimated that those cars were worth $2,291.89. She believed the total value of the stolen cars was $4,000-$5,000 accounting for the remaining cars she could not identify using buttons.

## II. TRIAL

Following an investigation, the State charged Joel Anderson with one count of burglary in the second degree and one count of theft in the second degree.

In a pretrial motion, the State asked the court to rule on the admissibility of Dyer's spreadsheet compiling her price estimates for the 48 identified redline cars and estimating their total value. It argued the document was admissible because Dyer, as the owner, is allowed to testify about the value of her stolen items without being qualified as an expert.

Anderson objected because the document was not signed or dated. He argued, "My objection is that that list could have been made by anybody at any time, and that we have no way of knowing on what those valuations are made, on what basis." *Id.* at 98. The State made an offer of proof stating that "it was based on, essentially, her understanding of the collection that she and her husband owned, as well as she was able to look up market values at the time as to the car's

---

[2] These buttons are also referred to in the record as coins. For simplicity and consistency, we use the term buttons.

values." *Id.* at 99. Anderson argued, "I think you may look things up in a book and see what market value is. But does she know to account for condition? Does she know to account for different versions of what appear to be the same car? She's not an expert." *Id.*[3]

The court declined to make a ruling on the admissibility of the document at that time, explaining,

> Well, as to value that she believes, she put a value on, I mean, that would be admissible. It may be subject to cross examination, of course, and be shown through that examination, not to be very accurate.
>
> But as for admissibility, I don't think that that's the issue. I'm more concerned about the format that it's in. As long as she's going to go through this, or she's going to testify that she developed the values that are on this list, I think in a summary form, that that is admissible. But again, it relies on the foundation that's laid at the time.

*Id.* at 99-100.

During its examination of Dyer, the State sought to have the exhibit admitted. It first asked Dyer how she estimated the value of the stolen cars, and she explained, "First, I tried going on my husband's -- late husband's email account to see if I can find any correlations that matches, and I found very few. So, then I went on [e]Bay to be able to figure out the cost of those cars." *Id.* at 123. Dyer explained that she compiled the information she found into a list, testifying "I did the best I could. Like I said, I didn't know every single car that he had in there, but I compiled that list based on the buttons that were left behind and what I could find on [e]Bay against those buttons." *Id.* Dyer testified that she compiled her list based on the fair market value of the cars.

---

[3] Anderson went on to note, "then we've got hearsay in the dead man's rule." VRP at 99. Although this may be construed as a hearsay objection, it is not the same hearsay issue that is at issue in this appeal.

Anderson did not lodge a specific evidentiary objection in response to the State's motion to admit the exhibit. Instead, Anderson asked the court to "reserve on admission of that exhibit until we've heard a little bit more about how the valuations were made." *Id.* at 125. The court admitted the exhibit, explaining "I've heard the testimony of how the list was compiled by the witness." *Id.*

Dyer explained that the list was not comprehensive because it included only 48 prices, yet there were 72 cars taken. She estimated the total "fair market value" of all the stolen cars was "probably close to between $4,000 and $5,000." *Id.* at 124. She explained that "most of them were good quality cars." *Id.* at 125. She also testified about the antique, collectible nature of the redline cars, the difficulty of obtaining the full collection, and the added value of the unique buttons for those cars. Dyer finally testified, "I estimate the whole display, if we were to sell that display, between $7,000 [and] $8,000." *Id.* at 138.

Later, Anderson called his friend Ero McNett as a witness. McNett was familiar with Hot Wheels and was a collector who bought them online. He explained that he typically bought cars in lots of 50-100 cars for $1.00 per car and that the most he would pay would be $3.00-$4.00 per car. He also testified that he had seen redline cars online for sale, and that compared to the large lots he typically bought, redlines were "a vintage version, and they're more expensive." *Id.* at 244. He said redline cars were "priceless" to some collectors. *Id.* at 245.

The jury was instructed that second degree theft requires the value of the stolen goods to exceed $750. It was also instructed, "Value means the market value of the property at the time and in the approximate area of the act." Clerk's Papers (CP) at 48.

The jury found Anderson guilty of second degree burglary and second degree theft.

### III. SENTENCING

Anderson was sentenced to 38 months' total confinement. Anderson was also ordered to pay a $500 VPA and a $100 DNA collection fee.

Anderson stipulated to his criminal history and corresponding offender score, including the convictions that he now claims have washed out. Based on his stipulated offender score of 7, he faced a standard sentencing range of 33-43 months for the burglary charge and 14-18 months for the theft charge.

Anderson's stipulated offender score includes seven prior felonies committed between 1993 and 2007. It shows that his most recent felony was trafficking stolen property, a crime committed in April 2007 and for which he was sentenced in March 2008.

Anderson appeals.

### ANALYSIS

### I. FAILURE TO OBJECT TO HEARSAY EVIDENCE

Anderson argues that his attorney was ineffective when he failed to lodge a hearsay objection to Dyer's spreadsheet. We disagree.

<u>A. Legal Principles</u>

Criminal defendants are constitutionally entitled to effective assistance of counsel. U.S. Const. amend. XIV; Const. art. I, § 22; *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Vazquez*, 198 Wn.2d 239, 247, 494 P.3d 424 (2021). We strongly presume counsel is effective. *Id.*

A claim of ineffective assistance of counsel requires a showing that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defendant. *Id.* at 247-

48. Deficient performance is that which falls below an objective standard of reasonableness. *Id.*

Prejudice requires showing a reasonable probability that the errors affected the case's outcome. *Id.*

at 248. A reasonable probability is one that is sufficient to undermine confidence in the outcome.

*Id.*

The owner of stolen property may testify about their opinion of the property's fair market

value. *State v. Hammond*, 6 Wn. App. 459, 461, 493 P.2d 1249 (1972). This is because property

owners are presumed to know the value of their property based on "inquiries, comparisons,

purchases and sales." *Id.* We have applied this presumption even where "the witness admittedly

had little knowledge of the exact value" of the stolen property. *Id.* at 462. The owner may be cross-

examined "to bring out the basis or lack of basis for the estimate," an inquiry that goes to the

weight of the opinion, not its admissibility. *Id.* at 463.

B. Application

We conclude that even if Anderson's counsel had performed deficiently, Anderson was not

prejudiced by the admission of the spreadsheet.

Although Anderson correctly points out that the value of the cars was an essential element

of the State's case against him, we are not persuaded by his argument that without the spreadsheet,

he would not have been convicted of second degree theft. The record contains ample other

evidence, besides the spreadsheet, to support the jury's finding that the value of the stolen cars was

between $750-$5,000.

Dyer testified extensively about the collectible, vintage nature of the redline cars that were

stolen, and this testimony was echoed by a defense witness who explained that to a collector,

redline cars are "priceless." VRP at 245. Dyer explained that it took over 10 years to amass the

collection because some of the redline cars are hard to find. This raises the strong inference that the market value of the redline cars stolen from Dyer's business far exceeded the low value ($1.00 to $4.00 per car) of the lot-priced cars McNett typically purchased.

Dyer also offered her admissible opinion testimony that the full collection was worth $7,000-$8,000 and that the stolen cars were worth $4,000-$5,000. As the owner of stolen property, she was entitled to offer her opinion about the value of that property and was subject to cross examination about the basis for her opinion. *Hammond*, 6 Wn. App. at 463. Anderson was free to argue to the jury that it should find Dyer's valuation unreliable and without proper foundation. Furthermore, Dyer's estimate far exceeded the threshold amount of $750 necessary to prove theft in the second degree. Even accounting for error in that estimate, the jury was presented with ample evidence from which it could conclude that the value of the cars was in excess of $750. This is especially true given that both parties offered evidence showing the collectible nature of redline cars.[4]

Accordingly, we affirm Anderson's second degree theft conviction.

## II. OFFENDER SCORE

Anderson argues that the trial court erroneously included washed out offenses in his offender score calculation, resulting in an ultimate sentence that was in excess of the court's authority. The State responds that Anderson stipulated to the offender score below and that his challenge is therefore waived. We agree with the State and conclude that Anderson's challenge to

---

[4] We also note that based on Anderson's pretrial arguments to the trial court about the admissibility of the spreadsheet, the correct objection to this evidence, if any, would have been lack of foundation, not hearsay.

the inclusion of these convictions in his offender score was waived when he stipulated to their inclusion.

Anderson argues in the alternative that he received ineffective assistance of counsel when his attorney stipulated to his offender score. We disagree.

A. Legal Principles

A trial court may only impose a sentence within its statutory authority. *See In re Pers. Restraint of Goodwin*, 146 Wn.2d 861, 867-68, 50 P.3d 618 (2002). It must reach its ultimate sentence by first calculating the defendant's offender score, taking into account the defendant's criminal history. RCW 9.94A.525, .530(1).[5] We review a trial court's offender score calculation de novo. *State v. Schwartz*, 194 Wn.2d 432, 438, 450 P.3d 141 (2019).

In order to establish a defendant's criminal history and offender score, the State must prove a defendant's prior convictions by a preponderance of the evidence. RCW 9.94A.500(1); *State v. Hunley*, 175 Wn.2d 901, 909-10, 287 P.3d 584 (2012). This burden is met if the defendant affirmatively acknowledges their criminal history on the record. *Hunley*, 175 Wn.2d at 912.

When a statutorily dictated crime-free period has elapsed, a defendant's prior offense is said to have " 'washed out' " and may not be included in their offender score. *Schwartz*, 194 Wn.2d at 439 (internal quotation marks omitted) (quoting *State v. Keller*, 143 Wn.2d 267, 284, 19 P.3d 1030 (2001)). A defendant's prior class B felony conviction washes out after ten consecutive crime-free years in the community. RCW 9.94A.525(2)(b).

---

[5] We cite to the current version of this statute because recent statutory amendments do not impact our analysis. *See* LAWS OF 2023, ch. 415, § 2; LAWS OF 2021, ch. 215, § 100 (RCW 9.94A.525); LAWS OF 2023, ch. 102, § 15 (RCW 9.94A.530).

Criminal defendants may challenge the trial court's legal determination of their offender score for the first time on appeal. *Goodwin*, 146 Wn.2d at 874. However, factual stipulations are subject to waiver. *Id.* ("waiver can be found where the alleged error involves an agreement to facts, later disputed, or where the alleged error involves a matter of trial court discretion").

B. Application

Anderson challenges his offender score for the first time on appeal, arguing that the trial court erroneously included washed out offenses because his most recent prior felony conviction was from 2007. We do not reach this argument because Anderson relieved the sentencing court of its duty to establish the factual basis for his offender score when he stipulated to the inclusion of the offenses he now claims washed out. *See id. See also State v. Huff*, 119 Wn. App. 367, 371, 80 P.3d 633 (2003).

However, because Anderson also argues ineffective assistance of counsel based on the stipulation to his offender score, we will consider the merits of his claim to the extent needed to determine whether he is entitled to relief on that ground. *See State v. Hernandez*, 172 Wn. App. 537, 545, 290 P.3d 1052 (2012).

Again, we apply the strong presumption that Anderson's attorney was effective. *Vasquez,* 198 Wn.2d at 247. Anderson bears the burden of showing his attorney's performance was deficient based on the trial court record. *Id.* at 248. He also must show that his attorney's deficient performance resulted in prejudice. *Id.*

Here, the record shows only that Anderson stipulated to the State's version of his criminal history and offender score. That stipulation shows that Anderson's 2007 felony resulted in a conviction and is devoid of further convictions until the 2019 crime at issue here. The record

contains no information about the duration of Anderson's confinement, if any, for his 2007 charges, so we cannot determine how long Anderson was in the community between his 2007 felony and his 2019 felony. Additionally, the record does not contain any indication of whether Anderson was convicted of misdemeanors that would interrupt the ten-year washout period.[6]

The record is insufficient to show that Anderson's attorney performed deficiently or that Anderson was prejudiced. "When an ineffective assistance of counsel claim is raised on direct appeal, we limit our review to matters within the trial court record." *State v. Gouley*, 19 Wn. App. 2d 185, 208, 494 P.3d 458 (2021).[7] Accordingly, Anderson cannot meet his burden on direct appeal to show that he is entitled to a resentencing as a result of his attorney's ineffective assistance. We affirm.

### III. LEGAL FINANCIAL OBLIGATIONS

Anderson asks that we remand for the VPA and the DNA collection fee to be stricken based on recent statutory amendments. The State concedes that Anderson is entitled to have these fees stricken as a result of his indigency at the time of sentencing. We accept the State's concession and remand for the trial court to strike the fees.

---

[6] The State, after this appeal was initiated, submitted to the trial court a printout of Anderson's criminal history from the Judicial Information System and subsequently transmitted that document to us as supplemental Clerk's Papers. We decline to consider this supplemental filing because it was not presented to the trial court at the time of sentencing and has not been accepted pursuant to RAP 9.11.

[7] "If a defendant wishes to raise issues on appeal that require evidence or facts not in the existing trial record, the appropriate means of doing so is through a personal restraint petition." *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

CONCLUSION

We affirm Anderson's second degree theft conviction and his offender score calculation. We remand this matter to the trial court to strike Anderson's VPA and DNA collection fee.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, C.J.

We concur:

LEE, J.

PRICE, J.