**FILED**
**DECEMBER 3, 2024**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 39861-7-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| NATASHA MAE JACKSON, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. — Natasha Jackson appeals her convictions for first degree burglary and second degree malicious mischief. We affirm.

## FACTS

Robert Kunzer arrived at his Klickitat County residence to discover his home had been ransacked and burglarized. In addition to property damage, numerous items were missing. Among them was a muzzleloader rifle.

Mr. Kunzer's home was equipped with a video surveillance system. The system captured Natasha Jackson breaking into his home, along with two accomplices. A law enforcement investigation revealed property belonging to Mr. Kunzer at a residence associated with Ms. Jackson. However, Mr. Kunzer's rifle was never recovered. The State

charged Ms. Jackson with first degree burglary while armed with a deadly weapon and

second degree malicious mischief.

Ms. Jackson was arrested several months after the burglary, at which point she

appeared in court for a preliminary hearing. She was not accompanied by an attorney. The

court advised Ms. Jackson of her rights, appointed counsel, and set bail.

Ms. Jackson appeared with counsel for the remainder of her court proceedings.

Counsel was able to lower Ms. Jackson's bail from $75,000 to $35,000, but Ms. Jackson

remained in custody as she was never able to post the required amounts. At trial, the State

presented testimony from Mr. Kunzer and two law enforcement officers. The jury

convicted Ms. Jackson as charged.

Approximately one hour after the jury returned its verdict, counsel learned of an

anonymous voicemail message that appears to have been intended for Ms. Jackson's

attorney.[1] The message stated as follows:

> [T]here is something that I have to tell you. There were two jurors on the
> Natasha Jackson case today who did not disclose that they knew the victim
> of the burglary. I don't know who else to turn to, but I want you to know
> that there may have been a miscarriage of justice on one of your clients,
> Natasha Jackson.

---

[1] The voicemail message was left with a local attorney whose name resembled that
of Ms. Jackson's attorney. The local attorney forwarded the message to the prosecutor.

Rep. of Proc. (July 14, 2023) at 334.

The parties brought the voice message to the attention of the court. Ms. Jackson's attorney believed the message might have been left by one of the jurors and suggested two possible names. The State's attorney disagreed that the message appeared to have been left by one of the jurors, instead raising the concern that it might have been left by Ms. Jackson's brother. The court decided to release phone contact information for the two jurors identified by Ms. Jackson's attorney and directed the parties to work together to make follow-up phone calls. Counsel for Ms. Jackson and the State attempted to call the jurors, but were unsuccessful. No further action was taken.

Ms. Jackson received a total sentence of 41 months. She timely appeals.

ANALYSIS

Ms. Jackson makes three arguments on appeal: (1) insufficient evidence supports her first degree burglary conviction, (2) the trial court violated her right to a fair and impartial jury by conducting an inadequate investigation into potential juror bias, and (3) the trial court violated her right to counsel by holding the bail hearing without counsel. We reject these arguments and address each in turn.

*Sufficiency of the evidence*

In assessing sufficiency of the evidence, we "view the evidence in the light most favorable to the State and decide whether any rational trier of fact could have found the elements of the crime beyond a reasonable doubt." *State v. Townsend*, 147 Wn.2d 666, 679, 57 P.3d 255 (2002). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "Circumstantial evidence is considered to be as reliable as direct evidence." *State v. Stewart*, 141 Wn. App. 791, 795, 174 P.3d 111 (2007).

Ms. Jackson contends the State presented insufficient evidence that she or an accomplice was "armed with a deadly weapon" as required for first degree burglary. RCW 9A.52.020(1)(a). Ms. Jackson recognizes that evidence of the missing rifle tended to show that either she or one of her accomplices had possessed the weapon and removed it from Mr. Kunzer's residence. But she argues that under *State v. Brown* this is not sufficient because first degree burglary requires evidence the firearm was "easily accessible and readily available for use." 162 Wn.2d 422, 431, 173 P.3d 245 (2007).

Ms. Jackson misreads *Brown*. The facts in *Brown* were unusual in that the firearm giving rise to the first degree burglary charge was never taken from the residence.

4

Instead, the homeowner merely discovered that the weapon had been moved from a closet to the top of a bed. According to *Brown*, these circumstances were insufficient to show the defendant had been armed for purposes of first degree burglary. *Id*. at 432. *Brown* specifically did not address whether a first degree burglary charge could be sustained based on evidence that a firearm had been removed from the home. *Id*. at 434 n.4.

As explained in *State v. Hernandez*, 172 Wn. App. 537, 290 P.3d 1052 (2012), *Brown*'s analysis is limited to its facts. When a firearm is removed from a residence during a burglary, *Brown* does not apply. Instead, the defendant will be considered armed for purposes of first degree burglary, regardless of whether the firearm was loaded or the defendant exhibited a willingness to use the firearm. *Id*. at 543-44.

This case falls under *Hernandez*, not *Brown*. Although there was no direct evidence linking Ms. Jackson or her accomplices with Mr. Kunzer's rifle, the circumstantial evidence showed that either Ms. Jackson or one of her accomplices had taken the rifle from Mr. Kunzer's home. This was sufficient to justify Ms. Jackson's first degree burglary conviction.

*Investigation of juror bias*

Judges have an ongoing duty to investigate allegations of juror bias and "to excuse jurors who are found to be unfit." *State v. Elmore*, 155 Wn.2d 758, 773, 123 P.3d 72 (2005). "A presumption of bias arises when a juror deliberately withholds material information in order to be seated on a jury." *State v. Cho*, 108 Wn. App. 315, 317, 30 P.3d 496 (2001). Our courts grant trial judges "broad discretion" to investigate issues pertaining to juror bias. *Elmore*, 155 Wn.2d at 773.

Ms. Jackson claims the trial court abused its discretion when it failed to conduct an investigation of juror bias beyond what was requested by the parties. We disagree.

Ms. Jackson's argument rests on the flawed assertion that the trial court "knew" "at least two jurors knew the alleged victim personally but hid that relevant fact from the court and the parties." Br. of Appellant at 24. Contrary to Ms. Jackson's assertion, there is no competent evidence in the record that any of the jurors knew the victim, let alone evidence that the jurors hid this information from the court. The only information regarding bias was an anonymous phone call. Outside of corroborating circumstances, this type of information is not considered reliable. *See State v. Lesnick*, 84 Wn.2d 940, 943, 530 P.2d 243 (1975). Given the lack of reliable evidence, it was not an abuse of

6

discretion for the trial court to refrain from conducting an independent and unrequested investigation into possible juror bias.

*Right to counsel*

A defendant charged with a crime has the right to assistance of counsel at all court hearings. *State v. Heng*, 2 Wn.3d 384, 388-89, 539 P.3d 13 (2023). "[C]ounsel 'shall' be provided 'as soon as feasible after the defendant has been arrested, appears before a committing magistrate, or is criminally charged.'" *Id*. (quoting CrR 3.1(b)(1)). The requirement to provide counsel applies, regardless of whether a court hearing is an initial appearance. The failure to provide counsel at an initial or preliminary hearing is an error that not only violates court rules, but also constitutional protections. *Id.* at 394-95.

Ms. Jackson correctly argues that the State's failure to provide counsel at her preliminary hearing was constitutional error. The only question is whether she is entitled to a remedy. If the preliminary hearing constituted a "critical stage of the prosecution," then the failure to provide counsel will be deemed a "structural error requiring automatic reversal." *Id*. at 392. But if the hearing was not at a critical stage, then reversal turns on application of the constitutional harmless error test.

As was true in *Heng*, the failure to provide counsel at Ms. Jackson's preliminary hearing does not require automatic reversal because the hearing was not at a critical stage

of the prosecution. "[A] critical stage is one where a defendant's rights were lost, defenses were waived, privileges were claimed or waived, or where the outcome of the case was otherwise substantially affected." *Id*. at 394. A hearing where a judge simply "appoint[s] counsel, set[s] bail, and . . . enter[s] a not guilty plea" does not meet this standard—at least when the defendant does not "lose [the] ability to challenge bail." *Id*. at 395. Like *Heng*, Ms. Jackson's preliminary hearing involved the appointment of counsel and a preliminary bail decision. She did not lose any rights, waive any defenses or privileges, or give up the opportunity to challenge the judge's bail decision. *Heng* mandates that we reject Ms. Jackson's claim of structural error.

Because the preliminary hearing was not at a critical stage of the prosecution, we turn to the constitutional harmless error test. Under this analysis, reversal is required unless the State can demonstrate "beyond a reasonable doubt" that the absence of counsel "did not contribute to the verdict." *Id*.

Ms. Jackson argues that the State cannot establish harmless error because the deprivation of counsel at her preliminary appearance caused the trial judge to become inalterably biased against her. This argument is not well taken. Judges are presumed to act with "honesty and integrity." *State v. Chamberlin*, 161 Wn.2d 30, 38, 162 P.3d 389 (2007). Ms. Jackson cites no evidence to overcome this presumption. Rather, she relies

entirely on speculation. This is not sufficient to preclude the State from meeting its burden. *See State v. Bennett*, 161 Wn.2d 303, 309, 165 P.3d 1241 (2007) (proof beyond a reasonable doubt "'does not require proof that overcomes *every possible doubt*'"); *United States v. Mikhel*, 889 F.3d 1003, 1033 (9th Cir. 2018) ("[A] 'reasonable doubt is a doubt based upon reason and common sense and is not based purely on speculation.'" (quoting NINTH CIR. JURY INSTRUCTIONS COMM., MANUAL OF MODEL CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT COURTS OF THE NINTH CIRCUIT 3.5 (2010 ed.)))

Putting aside Ms. Jackson's meritless argument regarding judicial bias, we find the violation of the right to counsel harmless beyond a reasonable doubt. Ms. Jackson's guilty verdict was rendered by a jury, not a judge. There is no indication that the jury was aware of what happened at Ms. Jackson's preliminary hearing or that the outcome of the preliminary hearing had an impact on trial. Furthermore, the trial evidence overwhelmingly supported the jury's verdict. The surveillance video linked Ms. Jackson to the burglary and stolen property was located at a residence associated with Ms. Jackson. As was true in *Heng*, the absence of counsel at Ms. Jackson's preliminary hearing was harmless beyond a reasonable doubt.

No. 39861-7-III
*State v. Jackson*

CONCLUSION

The judgment of conviction is affirmed.

A majority of the panel has determined this opinion will not be printed in

the Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____   _____
Lawrence-Berrey, C.J.              Cooney, J.

10